## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

| | |
|---|---|
| **EMILIO TORRES,** an individual, | Case No. |
| Plaintiff, | Hon. |
| v. | |
| | |
| **SALVATORE VITALE,** an individual, | |
| **BELINDA PIERSON,** an individual, | **TRIAL BY JURY DEMANDED** |
| **AGOSTINO VITALE,** an individual, | |
| **ANGELA LOGIUDICE-POLIZZI,** | |
| an individual, and | |
| **GIUSEPPE POLIZZI**, an individual, | |
| jointly and severally, | |
| | |
| Defendants. | |

_____

### CLASS ACTION COMPLAINT PURSUANT TO THE
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

*There is a pending civil action arising out of some of the*
*facts alleged in this Complaint - Case No. 1:18-cv-547.*

NOW COMES the Plaintiff, by and through his attorneys at Avanti Law Group, PLLC, and in his original Complaint brings this civil action pursuant to **Racketeer Influenced and Corrupt Organizations Act** (hereinafter "RICO"), 18 U.S.C. 1961 et seq., on his own behalf and on behalf of a class of individuals who were similarly injured by Defendants' violations of the RICO. Plaintiff complains that the Defendants Salvatore Vitale, Agostino Vitale, Belinda Pierson, Angela LoGiudice-Polizzi, and Giuseppe Polizzi ("Racketeer Defendants") operated a **criminal enterprise** engaged in a pattern of racketeering activity, including Wire Fraud and Mail Fraud, involving numerous RICO predicate acts, all in an effort to: 1) defraud the state, local and federal tax authorities (**TAX EVASION SCHEME**) as well as to 2) defraud Plaintiff and the members of the class of their wages (**WAGE THEFT SCHEME**) and 3) defraud their worker's compensation insurance carrier (**WORKERS COMPENSATION INSURANCE SCHEME**). Racketeer Defendants systematically and continuously, over the last ten (10) years and more, have conducted a corrupt enterprise in violation of the RICO Act, all acts of which are continuing in nature. Defendant Pierson intentionally and with full knowledge of the actions and their natural consequences, willingly conspired with Defendant Salvatore to participate in and/or further the criminal enterprise. Plaintiff and members of the class were injured as a result of the Racketeer Defendants' schemes to defraud. Plaintiff seeks a declaration that his rights, as well as

those of the class, have been violated and that he and members of the class be awarded damages for Defendants' unlawful conduct. In support of his claim he states as follows:

## PARTIES

1.   Plaintiff Emilio Torres (hereinafter referred to as "Torres") is a resident of the County of Kent, state of Michigan.

2.   Defendant Salvatore Vitale (hereinafter referred to as "Salvatore") is the owner of Vitale's Italian Restaurant, Inc. and Vitale's Pizzeria, Inc.

3.   Defendant Salvatore is responsible for the day-to-day operations of Vitale's Italian Restaurant, Inc. located at 834 Leonard St. NE Grand Rapids, MI 49503 (hereinafter referred to as "Vitale's Leonard") as well as the creation, enactment, and implementation of company wide policies. *Exhibit A, LARA Entity Search.*

4.   Defendant Belinda Pierson (hereinafter referred to as "Pierson") is the general manager of Vitale's Italian Restaurant, Inc., as well as the paramour of Defendant Salvatore, and is responsible for all administrative tasks such as payroll, which includes maintaining and verifying time cards at Vitale's Leonard.

5.   Defendant Agostino Vitale (hereinafter referred to as "Agostino") is the owner and resident agent of Vitale's Sports and Lounge, Inc., as well as the son of Defendant Salvatore, and is responsible for the day to day operations of Vitale's Sport and Lounge, Inc., located at 3868 West River Drive NE, Comstock Park, MI 49321 (hereinafter referred to as "Vitale's Comstock Park") as well as the enactment and implementation of company wide policies. *Exhibit B, LARA Entity Search.*

6.   Defendant Angela LoGiudice-Polizzi (hereinafter referred to as "Angela") and Defendant Giuseppe Polizzi (hereinafter referred to as "Giuseppe") are co-owners of Vitale's Pizza of Ada, Inc., as well as the niece of Defendant Salvatore, and are responsible for the day to day operations of Vitale's Pizza of Ada, Inc. located at 6650 Fulton St. E. Ada, MI 49301 (hereinafter referred to as "Vitale's Ada"). *Exhibit C, LARA Entity Search.*

7.   Defendant Salvatore owns and operates Vitale's Pizzeria, Inc., which has registered the following assumed names:

    a.   Vitale's;

    b.   Vitale's Pizza;

    c.   Vitale's III;

    d.   Vitale's IV;

    e.   Vitale's V. *Exhibit D, LARA Entity Search.*

8.      There are five (5) Vitale's restaurant locations. *See Exhibit E,* www.vitalespizza.com*,* last visited July 9, 2018 (Collectively referred to as "Vitale's Pizza"):

     a.   834 Leonard St. NE, Grand Rapids, MI 49503.

     b.   3868 West River Dr. NE, Comstock Park, MI 49321.

     c.   5778 Balsam Dr., Hudsonville, MI 49426.

     d.   59 W. Washington Ave., Zeeland, MI 49464.

     e.   6650 Fulton St. E. Ada, MI 49301.

9.      Defendant Salvatore is the President, Treasurer, Secretary and Director of Vitale's Italian Restaurant, Inc. and Vitale's Pizzeria, Inc. (hereinafter collectively referred to as "Vitale's Pizza"). *Exhibit A, LARA Entity Search and Exhibit D, LARA Entity Search.*

10.     Defendant Salvatore holds a financial and/or ownership interest in all Vitale's locations.

11.     Defendant Agostino is the owner and President of Vitale's Sports and Lounge, Inc. *Exhibit F, 2017 Annual Report.*

12.     Defendant Angela is the President and Treasurer of Vitale's Pizza of Ada, Inc. *Exhibit C, LARA Entity Search.*

13.     Defendant Giuseppe is the Secretary of Vitale's Pizza of Ada, Inc. *Exhibit C, LARA Entity Search.*

14.     Defendant Pierson is an authorized officer and/or agent of Defendant Vitale's Italian Restaurant. *Exhibit G, 2017 Annual Report.*

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) (RICO).

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

## GENERAL ALLEGATIONS

17.     Plaintiff has worked at three Vitale's restaurant locations from 2000 to 2018.

18.     Plaintiff worked at Vitale's Ada from 2000 through 2002.

19.     Plaintiff worked at Vitale's Comstock Park from 2002 through 2009.

20.     Plaintiff was most recently hired to work at Vitale's Leonard beginning in February 2010.

21.  Plaintiff worked at Vitale's Leonard from February 2010 to December 2010, then from January 2011 to May 2014, and then again from approximately March 2017 to May 7, 2018.

22.  Vitale's Pizza, and associated entities, is/are capable of holding a legal or beneficial interest in property.

23.  Plaintiff was hired to work in the kitchen during his employment with Vitale's at all three locations in which he worked.

## PLAINTIFF'S EMPLOYMENT WITH VITALE'S LEONARD

24.  Defendant Salvatore hired Plaintiff at Vitale's Leonard on or about February 2010 and Plaintiff worked through December 2010, worked again from January 2011 to May 2014, and then again from March 2017 to May 7, 2018.

25.  Defendant Salvatore set the terms and conditions of Plaintiff's employment at Vitale's Leonard.

26.  Defendant Salvatore told Plaintiff that he was to be compensated on an hourly basis but would not be paid an overtime premium for any hours worked in excess of forty hours per week.

27.  During his employment at Vitale's Leonard, Plaintiff was compensated as follows;

   a.  Plaintiff was compensated in the amount of $12.00 per hour at the time of hire.

   b.  Plaintiff was compensated in the amount of $13.00 per hour in 2011.

   c.  Plaintiff was compensated in the amount of $14.00 per hour in 2014.

   d.  Plaintiff was compensated in the amount of $15.00 per hour in 2017.

28.  Defendant Salvatore set Plaintiff's work schedule at Vitale's Leonard.

29.  In order to track his time, Plaintiff was required by Defendant Salvatore and Defendant Pierson to keep two different time cards.

30.  Defendant Pierson, general manager of Vitale's Leonard, required and instructed Plaintiff to track the first forty (40) hours of work per week on one timecard, and the remaining hours worked in a week up to forty (40) hours on the second timecard.

31.  Throughout Plaintiff's entire employment with Defendant Vitale's Leonard, Defendant Salvatore required and instructed Plaintiff and class members to use this two card system.

32.  Defendant Salvatore was and is responsible for the day to day operation of Vitale's Leonard and was and is directly involved in the decisions regarding the recruitment, hiring, work duties, scheduling and compensation of Plaintiff and class members.

33.   Defendant Salvatore was and is responsible for the creation, implementation, and enforcement of company wide policies and practices.

34.   Defendant Pierson was and is similarly responsible for decisions related to hiring, firing, compensation, scheduling and work duties of Plaintiff and the class members.

35.   Defendant Pierson was and is responsible for payroll, verifying time cards, and conveying information to the company's accountant and workers' compensation insurance agent.

36.   Defendant Pierson issued the workers their payroll checks *and* also issued the workers the payment in cash.

   a.   Specifically, she would pay all hours reflected in the first time card by way of direct deposit or check.

   b.   She would pay all hours reflected in the second time card by way of cash.

   c.   She also specifically instructed Plaintiff to never have one time card reflect more than forty (40) hours per week.

37.   Defendant Salvatore and Defendant Pierson were fully aware of the hours worked by Plaintiff and the class members.

38.   On March 28, 2018, a customer at the restaurant had a heated discussion with Defendant Salvatore which resulted in the customer making a threat to report Defendant Salvatore to the IRS for his failure to pay overtime and for payment of wages in cash.

39.   Plaintiff was present and overheard the threat made by the customer.

40.   Defendants Salvatore and Pierson made immediate changes to their implementation of the two timecard system as a result of the customer's threat.

41.   Defendants Salvatore and Pierson instructed Plaintiff and the other employees to take their second timecards home with them and to not leave those second timecards at the restaurant.

42.   Defendants Salvatore and Pierson further instructed Plaintiff and other employees to turn their timecards to Defendant Pierson at her home on Sundays so she could calculate the wages due from home.

43.   Defendant Pierson would then pay the Plaintiff and other employees on Monday in cash.

44.   As a result of this incident, Plaintiff began to question the use of the two timecard system as well as the policy of non-payment of overtime and cash payments.

## PLAINTIFF'S EMPLOYMENT WITH VITALE'S COMSTOCK PARK

45. Defendant Agostino hired Plaintiff at Vitale's Comstock Park in 2002 and Plaintiff worked there until 2009.

46. Defendant Agostino set the terms and conditions of Plaintiff's employment at Vitale's Comstock Park.

47. Defendant Agostino told Plaintiff that he was to be compensated on an hourly basis but would not be paid an overtime premium for any hours worked in excess of forty hours per week.

48. During his employment at Vitale's Comstock Park, Plaintiff was compensated as follows;

    a.    Plaintiff was compensated in the amount of $12.00 per hour at the time of hire.

    b.    Plaintiff was compensated in the amount of $13.00 per hour during the rest of his employment.

49. Defendant Agostino set Plaintiff's work schedule at Vitale's Comstock Park.

50. In order to track his time, Plaintiff was required by Defendant Agostino to keep and maintain two different time cards.

51. Defendant Agostino required and instructed Plaintiff to track the first forty (40) hours of work per week on one timecard, and the remaining hours worked in a week up to forty (40) hours on the second timecard.

52. Defendant Agostino required and instructed Plaintiff and class members to use this two card system.

53. Defendant Agostino was and is responsible for the day to day operation of Vitale's Comstock Park and was and is directly involved in the decisions regarding the recruitment, hiring, work duties, scheduling and compensation of Plaintiff and class members.

54. Defendant Agostino was and is responsible for the creation, implementation, and enforcement of company wide policies and practices.

55. Defendant Agostino was and is responsible for payroll, verifying time cards, and conveying information to the company's accountant and workers' compensation insurance agent.

56. Defendant Agostino issued the workers their payroll checks *and* also issued the workers the payment in cash.

    a.    Specifically, he would pay all hours reflected in the first time card by way of direct deposit or check.

b.      He would pay all hours reflected in the second time card by way of cash.

c.      He also specifically instructed Plaintiff to never have one time card reflect more than forty (40) hours per week.

57.     Defendant Agostino was fully aware of the hours worked by Plaintiff and the class members.

58.     The scheme outlined in Paragraph 49 is identical to the scheme employed at all Vitale's locations where Plaintiff worked, including Vitale's Ada and Vitale's Comstock Park.

59.     Plaintiff was to be compensated at his regular hourly rate, straight time via check for all hours worked under forty (40).

60.     Plaintiff and class members would be paid straight time for hours worked over forty (40) hours straight time via cash.

61.     Plaintiff and class members had two different time cards they were required to use to track their hours worked. Plaintiff and class members were required to punch 40 hours on one time card and any hours worked in excess of those first forty (40) hours on the second time card.

## PLAINTIFF'S EMPLOYMENT WITH VITALE'S ADA

62.     Defendants Angela and Giuseppe hired Plaintiff at Vitale's Ada in 2000 and Plaintiff worked there until 2002.

63.     Defendant Angela set the terms and conditions of Plaintiff's employment at Vitale's Ada.

64.     Defendant Angela told Plaintiff that he was to be compensated on an hourly basis but would not be paid an overtime premium for any hours worked in excess of forty hours per week.

65.     During his employment at Vitale's Ada, Plaintiff was compensated at a rate of $13.00 per hour.

66.     Defendant Angela set Plaintiff's work schedule at Vitale's Ada.

67.     In order to track his time, Plaintiff was required by Defendants Angela and Giuseppe to keep two different time cards.

68.     Defendants Angela and Giuseppe required and instructed Plaintiff to track the first forty (40) hours of work per week on one timecard, and the remaining hours worked in a week up to forty (40) hours on the second timecard.

69.     Defendant Angela required and instructed Plaintiff and class members to use this two card system.

70. Defendant Angela was and is responsible for the day to day operation of Vitale's Ada and was and is directly involved in the decisions regarding the recruitment, hiring, work duties, scheduling and compensation of Plaintiff and class members.

71. Defendants Angela and Giuseppe were and are responsible for the creation, implementation, and enforcement of company wide policies and practices.

72. Defendant Angela was and is responsible for payroll, verifying time cards, and conveying information to the company's accountant and workers' compensation insurance agent.

73. Defendant Angela would issue the workers their payroll checks and pay them in cash.

   a.   Specifically, she would pay all hours reflected in the first time card by way of direct deposit or check.

   b.   She would pay all hours reflected in the second time card by way of cash.

   c.   She also specifically instructed Plaintiff to never have one time card reflect more than forty (40) hours per week.

74. Defendants Angela and Giuseppe were fully aware of the hours worked by Plaintiff and the class members.

**<u>Tax Evasion Scheme</u>**

75. Racketeer Defendants devised a scheme, hereinafter known as the "Tax Evasion Scheme," with the goal of defrauding the local, state and federal tax authorities in order to avoid paying the requisite tax withholdings.

76. Defendants benefitted from the Tax Evasion Scheme by realizing more profits than what they would have without the scheme as follows:

   a.   They did not pay the required withholdings to the tax authorities on the cash payments made to Plaintiff and the class members for the hours recorded on the second timecard;

   b.    They were able to lessen their taxable income by not properly reporting the cash payments to the tax authorities.

77. As a result of these schemes against the tax authorities, Plaintiff and the class were economically harmed by exposure to tax liabilities and penalties.

78. Racketeer Defendants' nonpayment of withholdings also lessened Plaintiff and class members' future social security benefits.

79. Racketeer Defendants' two card scheme would require the Plaintiff and the class members to utilize the first card, paid by check or direct deposit, to reflect that Plaintiff and class members were working no more than forty (40) hours a week.

80.   Racketeer Defendants would then require Plaintiffs to utilize the second card to maintain any hours worked in excess of forty (40) hours per week off their books by paying Plaintiff and class members in cash for all hours worked as recorded on the second time card, regardless of whether those hours were a continuation of the hours worked on the first time card.

81.   The hours paid by the Racketeer Defendants on the second timecard were paid on a straight time basis - no time and half premium was paid for those hours.

82.   Cash payments for the second time card were distributed weekly at each restaurant location.

83.   At one point this year, a customer of the Vitale's Leonard informed Defendant Salvatore that he was aware of and planned to report their fraudulent activities to the Internal Revenue Service over the cash payments for overtime hours.

84.   Plaintiff inquired of Defendant Salvatore whether they would continue to use the two timecard system for tracking hours worked given the threat by the customer.

85.   Defendant Salvatore said that nothing would change and that he was not worried about the customer or anyone turning him in, implying he can make people "disappear."

86.   After the incident described in Paragraphs 83 - 85, Defendant Pierson would take the second time cards home each day and then give Plaintiff and class members payments in cash on the following Monday, so as to hide the evidence of the two timecard system and therefore the tax evasion scheme, from any auditors should they arrive.

87.   Racketeer Defendants misled Plaintiff into not reporting his cash income to the tax authorities by stating that they had to justify where the cash came from in their business records as some other costs, and that they would therefore not be reporting the cash payments as income and that Plaintiff should not attempt to report the cash payments.

88.   Defendants' use of the two time card system was an effort to defraud Federal, State, and local tax authorities and entities so as to not pay the requisite withholding taxes required on the cash payments made for the hours recorded on the second timecard.

89.   By using direct deposit, Racketeer Defendants used an interstate wire communication to further their scheme.

90.   Racketeer Defendants used the United States Postal Service to further their scheme by sending incorrect and/or fraudulent wage statements to the Plaintiff and the class members.

91.   By submitting time derived from the fraudulent system to calculate wages to Defendants' payroll service, Racketeer Defendants used an interstate wire communication to further their scheme.

92.   By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Racketeer Defendants committed wire and/or mail fraud to further their scheme as follows:

   a.   Racketeer Defendants were required to submit a UIA 1028 to the state of Michigan quarterly every year pursuant to 29 U.S.C. § 49(c) (incorporated in state law as Michigan Compiled Laws 421.1 *et seq.*) These communications are due each year on April 25, July 25, October 25, and January 25. On these tax forms, they would file with the Michigan Unemployment Insurance Agency ("UIA") via Michigan Web Account Manager ("MiWAM") website or via U.S. Mail with the total number of wages earned from all employees that formed the basis for calculating their unemployment tax. The numbers reported on these forms did not include the wages paid via cash and therefore, were meant to defraud the state of Michigan into lessening Defendants' tax burden. Each year since the inception and implementation of the Tax Evasion Scheme, Defendants would commit four (4) instances of wire and/or mail fraud per year.

   b.   Racketeer Defendants were required to submit a Federal 941 form pursuant to 26 U.S.C. § 6011 *et seq.* Employers are required to make contributions in the amount of 6.2% of total wages paid to employees pursuant to 26 U.S.C. § 3111. These documents were communicated to the IRS and contained, *inter alia*, a report of the number of all employees employed by the Racketeer Defendants and total wages paid to the same. These documents were used to ascertain, based on total wages, what amount of money Racketeer Defendants needed to contribute to the IRS. These documents were filed with the IRS  quarterly. These documents were either mailed using the U.S Postal Service or filed electronically. Each time this document was communicated with the incorrect/fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud. Racketeer Defendants would commit four (4) instances of wire fraud per year.

   c.   Racketeer Defendants Salvatore and Pierson were required to submit a Grand Rapids 1120 form pursuant to Grand Rapids City Ordinance Chapter 14 § 1590 *et seq.* Employers are required to pay tax withholdings to the City of Grand Rapids every year due on March 15. These documents communicated to the Grand Rapids Department of Treasury contained, *inter alia*, wages earned by all employees of employer. Each time this document was communicated with the incorrect/fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud. Racketeer Defendants would commit one (1) instance of mail and/or wire fraud per year.

**Wage Theft Scheme**

93.   Racketeer Defendants' use of the two time card system was also intended to defraud Plaintiff and class members of their overtime premium pay for all hours worked over forty (40).

94.     Racketeer Defendants devised the two time card system to intentionally defraud Plaintiff and class members of their proper wages.

95.     Defendant Pierson was responsible for implementing the two time card system and enforced it as to the Plaintiff and class members working at Vitale's Leonard.

96.     Defendant Pierson and the Racketeer Defendants would communicate or cause communication with the individual financial institutions of the Plaintiff and class members in the times stated below. Defendant Pierson and the Racketeer Defendants would communicate fraudulent deposits that, because of the two time card system, did not accurately depict monies earned in full.

97.     The deposits communicated contained dollar amounts that were incorrect/fraudulent and which were a result of Racketeer Defendants' Tax Evasion Scheme and therefore contained dollar amounts meant to defraud federal, state, and local tax entities.

98.     Each time a direct deposit was made, there was an act of wire fraud.

99.     Racketeer Defendants also mailed the wage statements to Plaintiff and the class members every other week at the end of the pay period.

100.    Those wage statements were incorrect/fraudulent as they contained amounts that were for less than the amount owed and/or paid to each Plaintiff and/or class member.

101.    The wage statements were incorrect/fraudulent as they contained amounts that were based on the Racketeer Defendants' Tax Evasion Scheme.

102.    Racketeer Defendants were required to mail out a IRS W-2 form to the Plaintiff and class members each year.

103.    By using the post office to mail out W-2s to Plaintiff and class members, Defendants used the mail in furtherance of their scheme.

104.    Each time Racketeer Defendants mailed a W-2 to Plaintiff and class members, this constituted an act of mail fraud. As an example as it relates to Plaintiff, Defendants Salvatore and Pierson issued the following W-2's to Plaintiff;

   a.   Enterprise Vitale's Italian Restaurant issued a W-2 to Plaintiff in 2012.

        i.   Based on the W-2, Plaintiff was paid $19,146.82. Based on this figure, the federal tax withholdings amounted to $737.93; the state tax withholdings amounted to $664.59; the city tax withholdings amounted to $278.21. Due to the Tax Evasion Scheme, Plaintiff's real wages were never reflected, and thus the numbers given were intended to defraud the tax authorities.

   b.   Enterprise Vitale's Italian Restaurant issued a W-2 to Plaintiff in 2013.

        i.   Based on the W-2, Plaintiff was paid $19,938. Based on this figure, the federal tax withholdings amounted to $916.59; the state tax withholdings

amounted to $698.83; the city tax withholdings amounted to $291.08. Due to the Tax Evasion Scheme, Plaintiff's real wages were never reflected, and thus the numbers given were intended to defraud the tax authorities.

    c.  Enterprise Vitale's Italian Restaurant issued a W-2 to Plaintiff in 2014.

        i.  Based on the W-2, Plaintiff was paid $22,473.10. Based on this figure, the federal tax withholdings amounted to $1075.84; the state tax withholdings amounted to $393.43; the city tax withholdings amounted to $165.51. Due to the Tax Evasion Scheme, Plaintiff's real wages were never reflected, and thus the numbers given were intended to defraud the tax authorities.

    d.  Enterprise Vitale's Italian Restaurant issued a W-2 to Plaintiff in 2015.

        i.  Based on the W-2, Plaintiff was paid $11,201.40. Based on this figure, the federal tax withholdings amounted to $529.12; the state tax withholdings amounted to $393.43; the city tax withholdings amounted to $163.51. Due to the Tax Evasion Scheme, Plaintiff's real wages were never reflected, and thus the numbers given were intended to defraud the tax authorities.

    e.  Enterprise Vitale's Italian Restaurant issued a W-2 to Plaintiff in 2017.

        i.  Based on the W-2, Plaintiff was paid $24,465. Based on this figure, the federal tax withholdings amounted to $1385.46; the state tax withholdings amounted to $895.96; the city tax withholdings amounted to $359.37. Based on Plaintiff's time cards, Plaintiff should have been paid $35,000.48. Due to the Tax Evasion Scheme, Plaintiff's real wages were never reflected, and thus the numbers given were intended to defraud the tax authorities.

105.  Racketeer Defendants, in the pay period from February 26, 2018 to March 4, 2018, gave Plaintiff two time cards for the same pay period. *Exhibit H.*

106.  Plaintiff would punch in and out between the two time cards as can be seen in Exhibit H.

    a.  Plaintiff punched in on Monday at 7:32 AM  and then punched out at 5:10 PM on Card 100. Plaintiff punched back in at 5:10 PM on Card 087 then punched out on Tuesday at 12:01 AM.

    b.  Plaintiff punched in and out using only Card 087 on Tuesday and Wednesday. but then used Card 100 for Thursday and some of Friday's hours.

    c.  Plaintiff's time cards are split between 40 and 38 hours. Plaintiff in this case worked a total of 78 hours.

107.  As another example, in the pay period from December 11, 2017 to December 17, 2017, Plaintiff had two time cards for the same pay period. Exhibit I.

108.  Plaintiff would punch in and out between the two time cards as can be seen in Exhibit I.

    a.  Plaintiff punched in on Monday at 7:54 AM and then punched out at 8:23 PM on Card 037.

    b.  Plaintiff punched in on Tuesday at 7:43 AM and then punched out at 1:37 PM on Card 039. Plaintiff punched back in on the same day at 1:37 PM and punched out at 9:12 PM on Card 037.

    c.  On Wednesday, Plaintiff punched in and out on both cards as well. On Card 039 from 7:44 AM to 4:00 PM and on Card 037 from 4:00 PM to 6:53 PM.

    d.  The same occurred on Thursday, Plaintiff punched on Card 039 from 7:51 AM to 11:54 AM and on Card 037 from 11:54 AM to 8:15 PM.

    e.  Plaintiff punched in and out using only Card 039 for Friday from 7:41 AM to 8:38 PM.

    f.  On Saturday, Plaintiff used both time cards. On Card 037 Plaintiff punched from 9:01 AM to 3:51 PM and on Card 039 from 3:51 PM to 8:12 PM.

    g.  Plaintiff's timecards are split between 38 and 35 hours. In this case, Plaintiff worked a total of 73 hours.

109.  Racketeer Defendants' use of the two timecard system was for the purpose of circumventing Racketeer Defendants' obligations under the various tax codes as well as their obligations under the FLSA.

110.  Racketeer Defendants failed to properly pay the Plaintiff and the class members as required in order to realize a financial gain.

111.  Racketeer Defendants utilized the two timecard scheme in order to implement and further their fraud against the Plaintiff and class members.

112.  Defendant Pierson intentionally participated in and furthered the scheme by instructing and requiring the Plaintiff and class members to use the two timecard system for tracking their hours worked per week.

113.  Defendant Pierson also instructed employees to take their second time card to her home, which she shares with Defendant Salvatore, on Sundays instead of keeping them at the business in order to avoid any possible detection should a state or federal agency come to do an audit of the business.

### Worker's Compensation Insurance Scheme

114.  Racketeer Defendants devised a scheme, hereinafter known as the "Worker's Compensation Insurance Scheme", with the intended goal of defrauding their Worker's

Compensation Insurance carrier by submitting fraudulent wage amounts to their carrier which was then relied upon and used to calculate their insurance premiums.

115.   Defendants benefitted from the Worker's Compensation Insurance Scheme by realizing more profits than what they would have without the scheme as follows:

    a.   They did not report the cash payment wages made to Plaintiff and the class members for the hours recorded on the second timecards;

    b.   They were able to lessen their total wages reportedly paid to their Worker's Compensation Insurance company by not properly reporting the cash payments and/or total wages paid to their employees to their carrier.

    c.   This resulted in the insurance premiums being based on fraudulent information which resulted in a lower premium charged to the Racketeer Defendants.

116.   As a result of accomplishing the goals of the scheme to defraud and in furtherance of this scheme, Racketeering Defendants paid workers in cash for part of their hours worked.

117.   Racketeer Defendants' two card scheme would require the Plaintiff and the class members to utilize the first card, paid by check or direct deposit, to reflect that Plaintiff and class members were working no more than forty (40) hours a week.

118.   Racketeer Defendants would then require Plaintiff and class members to utilize the second card to maintain any hours worked in excess of forty (40) per week off their books by paying Plaintiff and class members in cash for all hours worked as recorded on the second time card, regardless of whether those hours were a continuation of the hours worked on the first time card.

119.   Cash payments for the second time card were distributed weekly at each restaurant location.

120.   Defendants' use of the two time card system was an effort to defraud their Worker's Compensation Insurance carrier so as to not pay the high premiums by failing to report the cash payments made to Plaintiff and class members for the hours recorded on the second timecard.

121.   By reporting the fraudulent wage amounts to their insurance carrier, Racketeer Defendants used an interstate wire communication to further their scheme.

122.   By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Racketeer Defendants committed wire and/or mail fraud to further their scheme as follows:

    a.   Racketeer Defendants were required to obtain and maintain insurance for Workers Disability Compensation Act claims pursuant to M.C.L. 418.301 *et seq.* These documents typically contain a wage breakdown. These documents are in the exclusive control of Racketeer Defendants and/or their insurance company and

are easily discoverable via subpoena to the insurance company. Every instance these documents were communicated to the insurance company with the incorrect/fraudulent wages obtained through Racketeer Defendants' fraudulent Tax Evasion Scheme constitute a count of mail and/or wire fraud. Depending on discovery obtained, Racketeer Defendants would commit at least one (1) instance of wire fraud per year.

123. Plaintiff and the class members were harmed by the natural and obvious consequence of implementing and furthering the scheme.

124. In order to implement the scheme, Racketeer Defendants had to lower the amount of wages reported to their worker's compensation insurance agent.

125. The two timecard system was the means to further the scheme's goal.

126. As a result of Racketeer Defendants' scheme, Plaintiff and class members each were harmed by the Racketeer Defendants' failure to report their full wages paid and by failing to withhold the required taxes from their wages.

127. As a result of this scheme, Plaintiff and the class were economically harmed by exposing them to tax liabilities and penalties.

128. Racketeer Defendants' nonpayment of withholdings also lessened Plaintiff and class members' future social security benefits.

## RICO ENTERPRISE

129. Plaintiff is a "person" as within the meaning of 18 U.S.C. § 1964(c).

130. Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1964(c).

131. Plaintiffs and the Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

132. Defendants Salvatore, Agostino, Angela, Giuseppe, the various Vitale's entities, the payroll companies for the various entities, Defendant Pierson, Secretary to Defendant Pierson Debbie (last name unknown), Secretary to Defendant Pierson Sarah (last name unknown), and Secretary to Defendant Pierson Saron Mogos, carried out their racketeering activity through an association- in- fact "enterprise" (the `Enterprise"), as the term is defined  in 18 U.S.C. § 1961(4).

133. The legal entities were used for illegal purposes by the unofficial, corrupt "enterprise."

134. Although all Racketeer Defendants participated in the Enterprise and were a part of it, they each also have an existence separate and distinct from the Enterprise.

135. The common purpose of the enterprise was to defraud money from the local, state and federal tax authorities, Plaintiff and class members, as well as the worker's compensation

insurance companies in order to realize a greater financial benefit for the Racketeer Defendants.

136.  Through the criminal fraud schemes described above, the Racketeer Defendants knowingly, and with specific intent to profit, operated and managed the enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

137.  Defendant Pierson conspired with Defendant Salvatore in order to further the schemes described above in violation of RICO, 18 U.S.C. § 1962(d).

138.  This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain/benefit and were done within the past ten (10) years and are continuing.

139.  By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the law, through their ongoing criminal enterprise as set forth below.

140.  The Defendants each intended the natural and obvious results of their actions.

## PREDICATE RACKETEERING ACTS

141.  In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully committed the following predicate racketeering offenses of Mail and Wire fraud under RICO.

142.  The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding the tax authorities, the Plaintiff and class members and their insurance carriers for profit.

### *Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341*

143.  The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting mail fraud.

144.  Racketeer Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341. 18 U.S.C. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private

or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

145.    Racketeer Defendants knowingly used the mail with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

146.    Racketeer Defendants' use of the mail postal service was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiff and class members and their insurance carriers.

147.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from state and federal tax authorities.

148.    Racketeer Defendants Salvatore and Pierson devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from local tax authorities.

149.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from Plaintiff and class members by not paying them their proper wages when due.

150.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

151.    Defendant Salvatore intentionally used the mail to send W-2s and paychecks to Plaintiff and class members derived from Defendant Salvatore's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341 during his employment at Vitale's Leonard.

152.    Defendant Pierson intentionally used the mail to send W-2s and paychecks to Plaintiff and class members derived from Defendant Salvatore's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341 during his employment at Vitale's Leonard.

153.    Defendant Agostino intentionally used the mail to send W-2s and paychecks to Plaintiff and class members derived from Defendant Agostino's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341 during his employment at Vitale's Comstock Park.

154.    Defendants Angela and Defendant Giuseppe intentionally used the mail to send W-2s and their paychecks to Plaintiff and class members derived from Defendant Angela and

Giuseppe's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341 during his employment at Vitale's Ada.

155.   Racketeer Defendants intentionally and with full knowledge of their actions and the natural consequences of those actions used the mail to send Plaintiff and similarly situated W-2s and their paychecks which contained fraudulent figures of underpaid withholdings and unpaid wages due to Defendants' two timecard system in order to defraud Plaintiff of overtime compensation and social security and other withholdings and also the local, state and federal tax authorities of collectable taxes with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

156.   Racketeer Defendants intentionally and with full knowledge of their actions and the natural consequences of those actions used the mail to send Plaintiff and similarly situated W-2s which contained fraudulent figures of underpaid withholdings and unpaid wages due to Defendants' two timecard system in order to defraud Plaintiff of overtime compensation and social security withholdings and also the local, state and federal tax authorities of collectable taxes with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

157.   In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants sent correspondence and other documents that were sent or delivered by the Postal Service.

***Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343***

158.   The Racketeer Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting wire fraud.

159.   Defendants further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343. 18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

160.   Racketeer Defendants knowingly used the interstate wire communication with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

161.   Racketeer Defendants' use of wire communication was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiff and class members and their insurance carriers.

162.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from local, state and federal tax authorities.

163.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from plaintiff and class members by not paying them their proper wages when due.

164.    Racketeer Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

165.    Racketeer Defendants transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

166.    Defendants Salvatore and Pierson intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from Defendant Salvatore's two timecard system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343 during his employment at Vitale's Leonard.

167.    Defendant Agostino intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from Defendant Salvatore's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343 during his employment at Vitale's Comstock Park.

168.    Defendant Angela and Defendant Giuseppe intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from Defendant Salvatore's two time card system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343 during his employment at Vitale's Ada.

169.    Racketeer Defendants intentionally and with full knowledge of their actions and the natural consequences of those actions used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from Racketeer Defendants' two timecard system in order to defraud Plaintiff and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

170.   In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Racketeer Defendants sent correspondence and other documents that were sent or delivered by the Postal Service.

## PATTERN OF RACKETEERING ACTIVITY

171.   The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5). As described above, Racketeer Defendants repeatedly committed the predicate acts over a period of several years. In addition, Racketeer Defendants repeatedly engaged in unlawful acts to further their criminal scheme upon the Plaintiff and class members.

172.   Defendant Pierson willingly, and with full knowledge of her actions and the natural and obvious consequences of those actions, conspired with Defendant Salvatore to further the enterprise and assist him in committing a pattern of racketeering activity.

173.   The predicate acts of criminal racketeering activity described above were related in at least the following ways:

   a.   They had common participants;

   b.   They each had the same victims, namely the Plaintiff and class members, as well as the government tax entities and insurance companies;

   c.   They each had the same purpose of defrauding government entities, their employees and their insurance carriers for the benefit of the Racketter Defendants and at the expense of Plaintiff and class members;

   d.   They each accomplished this purpose through use of the two timecard system and by paying cash to their employees;

   e.   They were interrelated in that without the acts of mail fraud and wire fraud, the Racketeer Defendants would not have been able to exploit Plaintiff and class members and deprive them of their rights and property.

174.   Such acts of racketeering activity have been part of the Defendants' regular way of doing business through the enterprise(s) described above for at least ten years and has continued through at least the termination of Plaintiff on May 7, 2018.

175.   Throughout the relevant time period, each Racketeer Defendant were a culpable "person" as defined by RICO, 18 U.S.C. § 1961(3).

## RULE 23 CLASS ALLEGATIONS

176.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of all similarly situated current and former employees of Racketeer Defendants who are or were employed at any time in the last four years.  Plaintiff proposes the following class definition:

> *All current and former employees of Vitale's restaurants located on Leonard Street, Comstock Park and in Ada that were paid in cash.*

Plaintiff reserves the right to amend the putative class definition if necessary.

177.  Plaintiff shares the same interests as the putative class and will be entitled under the RICO to treble damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative class.

178.  The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendants employed dozens if not hundreds of workers.  The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendants' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

179.  The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendants engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class.  Individual questions that Plaintiff claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

   a.  Whether Defendants engaged in a policy or practice of utilizing a two timecard system for tracking hours worked by the Class;

   b.  Whether Defendants engaged in a scheme to defraud local, state and federal tax authorities;

   c.  Whether Defendants engaged in a scheme to defraud the Class of their wages;

   d.  Whether Defendants engaged in a scheme to defraud their worker's compensation insurance carrier;

   e.  Whether the Defendants engaged in Mail fraud;

   f.  Whether the Defendants engaged in Wire Fraud;

   g.  Whether the Class was harmed by the schemes to defraud;

   h.  Whether the Defendants violated the RICO;

   i.  Whether the Defendants should be required to compensate the Class with treble damages, attorneys fees and costs for violating the RICO.

180.  The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendants, were all required to track their hours worked on two separate timecards and were all paid in cash.

181. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

182. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

183. The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

184. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## <u>COUNT I</u>
## <u>Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*</u>
## <u>MAIL AND WIRE FRAUD OF FEDERAL GOVERNMENT</u>

185. Plaintiff realleges and incorporates herein all previous paragraphs.

186. Vitale's Italian Restaurant Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Salvatore and Defendant Pierson are employed by or associated with the enterprise.

187. Vitale's Sports and Lounge, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino is employed by or associated with the enterprise.

188. Vitale's Pizza of Ada, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Angela and Defendant Giuseppe are employed by or associated with the enterprise.

189. Racketeer Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

190.  Racketeer Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the IRS. Specifically, any and all instances where a direct deposit was authorized by Racketeer Defendants of the deposit of compensation derived from the fraudulent use of the two time card system that did not reflect the total compensation to the rest of the same being distributed via cash. Also any and all instances where Racketeer Defendants communicated with the IRS and represented incorrect tax withholdings due to the fraudulent use of the of the two timecard system meant to defraud the same. Further, any and all instances where Defendant sent W-2s to Plaintiff and similarly situated workers that represented incorrect tax withholdings calculated due to the fraudulent use of the two time card system meant to defraud the IRS.

191.  As a direct, intended, and foreseeable result of the Racketeer Defendants' violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money and exposure to additional tax liability along with fines and interest.

192.  The criminal acts of mail fraud and wire fraud committed by Racketeer Defendants was directly related to and were substantial factors in causing injury to Plaintiff and class members.

193.  The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

194.  Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

195.  Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT II
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
## MAIL AND WIRE FRAUD OF STATE GOVERNMENT

196.  Plaintiff realleges and incorporates herein all previous paragraphs.

197.  Vitale's Italian Restaurant Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Salvatore and Defendant Pierson are employed by or associated with the enterprise.

198.  Vitale's Sports and Lounge, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino is employed by or associated with the enterprise.

199.  Vitale's Pizza of Ada, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Angela and Defendant Giuseppe are employed by or associated with the enterprise.

200.  Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

201.  Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Michigan Department of Treasury. Specifically, any and all instances where a direct deposit was authorized by Defendants of the deposit of compensation derived from the fraudulent use of the two timecard system that did not reflect the total compensation to the rest of the same being distributed via cash. Also any and all instances where Defendants communicated with the Michigan Department of Treasury and represented incorrect tax withholdings due to the fraudulent use of the of the two time card system meant to defraud the same. Further, any and all instances where Defendant sent W-2s to Plaintiff and similarly situated workers that represented incorrect tax withholdings calculated due to the fraudulent use of the two time card system meant to defraud the Michigan Department of Treasury.

202.  As a direct, intended, and foreseeable result of the Defendant's violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

203.  The criminal acts of mail fraud and wire fraud committed by Defendant was directly related to and were substantial factors in causing injury to Plaintiff and class members.

204.  The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

205.  Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

206.  Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT III
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.* MAIL AND WIRE FRAUD OF CITY GOVERNMENT (AS TO DEFENDANTS PIERSON AND SALVATORE)

207.  Plaintiff realleges and incorporates herein all previous paragraphs.

208.   Vitale's Italian Restaurant Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Salvatore and Defendant Pierson are employed by or associated with the enterprise.

209.   Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

210.   Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Grand Rapids Income Tax Department. Specifically, any and all instances where a direct deposit was authorized by Defendants of the deposit of compensation derived from the fraudulent use of the two time card system that did not reflect the total compensation to the rest of the same being distributed via cash. Also any and all instances where Defendants communicated with the Grand Rapids Income Tax Department and represented incorrect tax withholdings due to the fraudulent use of the of the two time card system meant to defraud the same. Further, any and all instances where Defendant sent W-2s to Plaintiff and similarly situated workers that represented incorrect tax withholdings calculated due to the fraudulent use of the two time card system meant to defraud the Grand Rapids Income Tax Department.

211.   As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

212.   The criminal acts of mail fraud and wire fraud committed by Defendants were directly related to and were substantial factors in causing injury to Plaintiff and class members.

213.   The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

214.   Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

215.   Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT IV
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
## MAIL AND WIRE FRAUD OF PLAINTIFF AND CLASS MEMBERS

216.   Plaintiff realleges and incorporates herein all previous paragraphs.

217.   Vitale's Italian Restaurant Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Salvatore and Defendant Pierson are employed by or associated with the enterprise.

218.   Vitale's Sports and Lounge, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino is employed by or associated with the enterprise.

219.   Vitale's Pizza of Ada, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Angela and Defendant Giuseppe are employed by or associated with the enterprise.

220.   Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

221.   As a direct, intended, and foreseeable result of the Defendants' violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

222.   The criminal acts of mail fraud and wire fraud committed by Defendants was directly related to and were substantial factors in causing injury to Plaintiff and class members.

223.   The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

224.   Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

225.   Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

226.   Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT V
### Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
### MAIL AND WIRE FRAUD OF WORKER'S COMPENSATION INSURANCE

227.   Plaintiff realleges and incorporates herein all previous paragraphs.

228.   Vitale's Italian Restaurant Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Salvatore and Defendant Pierson are employed by or associated with the enterprise.

229.    Vitale's Sports and Lounge, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino is employed by or associated with the enterprise.

230.    Vitale's Pizza of Ada, Inc., is an enterprise engaged in and whose activities affect interstate commerce. Defendant Angela and Defendant Giuseppe are employed by or associated with the enterprise.

231.    Defendants associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

232.    Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and their Worker's Compensation Insurance carrier. Specifically, any and all instances where a report was given to Defendants' insurance carrier of compensation derived from the fraudulent use of the two time card system that did not reflect the total compensation to the rest of the same being distributed via cash.

233.    As a direct, intended, and foreseeable result of the Defendant's violations of RICO, through the criminal scheme described above, Plaintiff and class members have suffered injury to their property, including the loss of money.

234.    The criminal acts of wire fraud committed by Defendant was directly related to and were substantial factors in causing injury to Plaintiff and class members.

235.    The acts of wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

236.    Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

237.    Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT VI
## Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.* CONSPIRACY TO VIOLATE RICO

238.    Plaintiff realleges and incorporates herein all previous paragraphs.

239.    Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud Plaintiff and class members.

240.  Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud the tax authorities.

241.  Defendants conspired by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud their insurance carriers.

242.  Defendant Pierson willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Salvatore to further the criminal scheme to defraud the tax authorities.

243.  Defendant Pierson willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Salvatore to further the criminal scheme to defraud the Plaintiff and class members.

244.  Defendant Pierson willfully, intentionally and with full knowledge of the actions taken and their natural and obvious consequences conspired with Defendant Salvatore to further the criminal scheme to defraud the insurance carrier.

245.  Defendants have directly and indirectly participated in the conduct that furthered the schemes of the enterprise affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

246.  Plaintiff is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.    Certifying this action as a class action pursuant to Rule 23(b)(3).

B.    Designating Plaintiff as the representative of the proposed Rule 23 Class;

C.    Appointing Avanti Law Group, PLLC as Class Counsel;

D.    Granting Judgment in favor of Plaintiff against Defendants and award Plaintiff and Class

Members treble compensatory damages for Defendants' violation of RICO;

E.    Award Plaintiff's costs and reasonable attorneys' fees; and

F.    The Court grant such other and further relief as the Court may deem just or equitable.

## JURY DEMAND

NOW COMES Plaintiff, by and through his attorney, and hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: July 11, 2018                          Respectfully Submitted,

                                              */s/   Robert Anthony Alvarez*            .
                                              Robert Anthony Alvarez (P66954)
                                              Attorney for Plaintiff
                                              Avanti Law Group. PLLC

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: 07-09-18

Emilio Torres