UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EMILIO TORRES, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SALVATORE VITALE, ET AL., )<br>    Defendants. )<br>_____ ) | No. 1:18-cv-766<br><br>HONORABLE PAUL L. MALONEY |

# OPINION

Plaintiff Emilio Torres has a long history in the restaurant business, and specifically, with Vitale's Pizzeria. Over the last fifteen years, he has worked off-and-on for various Vitale's branches in Western Michigan associated with the Defendants: Salvatore Vitale, Belinda Pierson, Agostino Vitale, Angela Polizzi, and Giuseppe Polizzi.

He now claims that the Defendants engaged in a criminal enterprise for racketeering including schemes of tax evasion, wage theft, and workers' compensation fraud. These are serious, complicated-sounding charges. But at its core, this is a simple case: Torres says that the Defendants did not report all of the hours that he worked and paid some of his wages in cash, under-the-table to avoid paying overtime premiums.

The matter is now before the Court on three motions to dismiss. The Polizzis argue that the statute of limitations bars Torres' RICO claims as to them and that Torres has otherwise failed to plead their personal involvement in the alleged criminal enterprise. Defendant Agostino Vitale also raises the statute of limitations. Finally, Defendants Salvatore Vitale and Belinda Pierson assert that Torres lacks standing to pursue his RICO claims, that

1

his claims are preempted by the Fair Labor Standards Act, that his claims as to them are partially barred by the statute of limitations, and that he has otherwise failed to state to state a claim for which relief can be granted. For the reasons to be explained, all three motions will be granted, and the action will be dismissed with prejudice.

I.  Factual Allegations[1]

   A. The Vitale's Business Enterprise

Vitale's Italian Restaurant Incorporated is a business entity owned by Defendant Salvatore Vitale and managed by Defendant Belinda Pierson. Over the years they have expanded the Vitale's restaurant empire from a single location in Grand Rapids, Michigan (described in the litigation as "Vitale's Leonard" because it is located on Leonard Street) to five locations spread across Western Michigan. Plaintiff asserts that Salvatore maintains an ownership interest in all of the Vitale's locations and some level of control over the managerial and operational aspects of the other locations, but that he has also enlisted his friends and family as owner/operators of the other Vitale's locations.

One such restaurant is Vitale's Pizza of Ada, located in Ada, Michigan. This location is owned and operated by Defendants Angela LoGiudice-Polizzi and Giuseppe Polizzi. Angela is Salvatore Vitale's niece. Defendant Agostino Vitale owns and operates another of the restaurants: Vitale's Sports Bar and Lounge, located in Comstock Park, Michigan. Agostino is Salvatore's son.

---

[1] The following facts are alleged in Plaintiff's First Amended Complaint and must be taken as true for purposes of Defendants' Rule 12 motions.

Plaintiff also alleges that each of the Vitale's locations shares common marketing and holds itself out to the public as a single entity, that they engage in uniform business and operations practices, and share recipes, menus, vendors, and suppliers.

### B. Plaintiff's Employment with Vitale's

Plaintiff Emilio Torres has worked at three different Vitale's restaurants in his professional career. He began at Vitale's Ada from 2000 to 2002. Then he worked at Vitale's Comstock Park from 2002 to 2009. And then he worked at Vitale's Leonard during part of 2010, continuously from January 2011 to May of 2014 and then again from March of 2017 to May 7, 2018.

Torres claims that when he worked for Vitale's Leonard between 2010 and 2018, Salvatore told him that he would be compensated at an hourly rate, but because Vitale's was a small business, he would not be paid an overtime premium for hours he worked in excess of forty. Plaintiff also alleges that Salvatore and Belinda made him keep two different time-cards while he worked at Vitale's Leonard: One to track the first forty hours of his work week, and a second to track any remaining hours.

Torres also says that Belinda handled payroll. She would pay Torres via direct deposit or check for the hours on his first time-card, and then would separately pay him in cash for hours tracked on the second time-card—at straight time, with no overtime premium. Pierson allegedly instructed Torres that he could never have more than forty hours on one time-card. Finally, Torres claims that when he previously worked at Vitale's restaurants, the system worked much the same and that he received identical explanations—down to the word—from Agostino, Angela, and Giuseppe.

The alleged under-reporting of hours and underpayment of overtime wages came to a head on March 28, 2018, when a customer threatened Salvatore that he would report his failure to pay overtime to the IRS.[2] After the confrontation, Belinda allegedly instructed all employees to take their second time-cards home with them, tending to show that she knew that Vitale's time-keeping and overtime policies were not compliant with state or federal law. She further instructed the employees to bring their second time-cards to her home over the weekend, and that she would pay the employees in cash the following Monday. Plaintiff claims that he only began to question Vitale's non-payment of overtime and timekeeping practices after this confrontation.

C. Alleged RICO Predicates

Plaintiff claims that the facts alleged were part of multiple illegal schemes collectively orchestrated by the Defendants. First, he claims that the Defendants engaged in tax evasion by under-reporting the hours their employees worked by failing to pay "the required withholdings to the tax authorities on the cash payments" made for the hours recorded on the second time card. Similarly, Plaintiff claims that Defendants decreased their taxable income by "not properly reporting the cash payments to the tax authorities." Plaintiff claims that, as a result of these acts, he was "economically harmed by exposure to tax liabilities and penalties[]" and they decreased his social security payout in the future.

The same basic facts are the basis for Plaintiff's claim that Defendants engaged in a scheme of wage theft: "Defendant Pierson and the Racketeer Defendants would

---

[2] It is unclear from the pleadings who this person was or how he had knowledge of Vitale's alleged illegal pay scheme.

4

communicate fraudulent deposits that, because of the two time card system, did not accurately depict monies earned in full."

He also reasons that every direct deposit, which did not accurately reflect his pay, was an act of wire fraud. Similarly, when the Defendants mailed Torres his yearly W-2 tax form, which did not record his cash payments, Torres claims that constituted mail fraud.

Finally, the same facts again give rise to Plaintiff's theory that Defendants engaged in a scheme to defraud their worker's compensation carriers by under-reporting hours. In other words, because the Defendants allegedly under-reported the wages paid to their employees, they received lower insurance premiums than they otherwise would have.

From these facts, Plaintiff has raised six counts in his First Amended Complaint. Notably, Plaintiff does not proceed under the Fair Labor Standards Act in this suit; all six counts are variants of civil RICO claims or conspiracy claims.[3] The matter is now before the Court on dispositive motions by all three sets of Defendants.

## II.   Legal Framework: Motion to Dismiss

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule

---

[3] However, numerous other lawsuits raising similar claims arising out of employment at Vitale's are underway, including two suits by Torres against Vitale's Restaurant Incorporated, Salvatore Vitale, and Belinda Pierson. *See* Docket No. 1:18-cv-547 (W.D. Mich.); 1:18-cv-1088 (W.D. Mich.). The complaints in Torres' other actions read nearly identically to the complaint in this action but are limited to claims under the Fair Labor Standards Act.

5

12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need *detailed* factual allegations"; rather, "it must assert *sufficient* facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests." *Rhodes v. R&L Carriers,*

6

*Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

Dismissal of a complaint under Rule 12(b)(6) is appropriate when an affirmative defense, such as the statute of limitations, can be determined from the face of the complaint. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir. 2016) (affirming dismissal of complaint based on expired statute of limitations); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (same). However, where fact questions cause a dispute as to when a cause of action accrued, it is generally inappropriate to dismiss a complaint on statute of limitations grounds. *Ibid.*

## III. Discussion

Congress enacted the Racketeer Influenced and Corrupt Organizations (RICO) Act in 1970 to prosecute organized crime. *See* 18 U.S.C. §§ 1961-1968 (2006). Specifically, Congress enacted RICO to deal with "patterns" of activity by enterprises or organizations including:

> (1) violence (e.g., murder, robbery, etc.);
> (2) the provision of illegal goods and services (e.g., drugs, gambling, prostitution, etc., including undocumented aliens);
> (3) corruption in labor or management relations (e.g., bribery, extortion, embezzlement, etc.);
> (4) corruption in government (e.g., bribery, extortion, fraud against the government, etc.); and
> (5) commercial and other forms of fraud (schemes to defraud, bankruptcy fraud, securities fraud, etc.)

*See generally* G. Robert Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 NOTRE DAME L. REV. 237, 300-06 (1982).

RICO contains a private right of action, in addition to its criminal law components. 18 U.S.C. § 1964(c) provides in part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

One such violation of § 1962 is § 1962(c), which makes it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In turn, "racketeering activity" is defined by reference to "predicate acts," including offenses for mail and wire fraud. *See* 18 U.S.C. § 1961(1)(A). In sum, a party advancing a civil RICO claim must establish their right to sue and then further allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

There are limitations on the types of claims that can be brought under RICO. Plaintiffs may assert a RICO claim only if they can identify an injury to their "business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "In so limiting the scope of RICO standing, Congress exhibited an intention to exclude 'personal injury'—that is, 'an injury to a person, such as a broken bone, a cut, or a bruise' or a 'bodily injury.'" *Gamboa v. Ford Motor Co.*, 2019 WL 1441615 (E.D. Mich. Mar. 31, 2019) (quoting *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564 (6th Cir. 2013)).

8

A RICO injury must also be concrete, not intangible or speculative. *See Saro v. Brown*, 11 F. App'x 387, 389 (6th Cir. 2001); *see also Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (explaining that RICO plaintiffs must identify a "reasonable and principled basis of recovery" which is "not based upon mere speculation and surmise"); *Short v. Janssen Pharm., Inc.*, No. 1:14-CV-1025, 2015 WL 2201713, at *3 (W.D. Mich. May 11, 2015) ("Short must, at a minimum, show some direct, pecuniary injury to his own pocket that is unrelated to the claimed personal injury.").

Finally, Congress did not expressly impose a statute of limitations on civil RICO actions, but the Supreme Court has held that such claims are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (establishing a four-year statute of limitations for civil RICO claims). The clock begins to run "when a plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 554 (2000); *see also Guy v. Mercantile Bank Mort. Co.*, 711 F. App'x 250, 253 (6th Cir. 2017) ("[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock." (quoting *Rotella*, 528 U.S. at 555)). However, in certain circumstances where the alleged wrongdoer engaged in fraudulent concealment, courts may toll the statute of limitations:

> "[A] plaintiff must prove that: "(1) [the] defendant[ ] concealed the conduct that constitutes the cause of action; (2) defendant['s] concealment prevented plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009) (citations omitted). "A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1160 (6th Cir. 1991)). The

9

> plaintiff must establish affirmative acts of concealment; "[m]ere silence, or [an] unwillingness to divulge one's allegedly wrongful activities, is not sufficient" to warrant tolling. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465-72 (6th Cir. 1988), cert. denied, 488 U.S. 880 (1988). "[T]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Carrier*, 673 F.3d at 446-47 (internal quotation marks omitted).

*Guy*, 711 F. App'x at 253.

Finally, the majority of Circuit Courts of Appeal follow a "separate accrual" rule to allows for a civil RICO claim to accrue for each injury caused by the commission of a separable, new predicate act within the limitations period. *See Love v. Nat'l Med. Enterps.*, 230 F.3d 765 (5th Cir. 2000) (citing *Bankers Trust CO. v. Rhoades*, 859 F.3d 1096, 1102 (2d Cir. 1988).

With this general understanding of the parameters of civil RICO claims, the Court will now turn to the specific arguments advanced by the Defendants in support of their motion to dismiss.

### A. Statute of Limitations

First, each set of Defendants has also moved to dismiss claims that arose more than four years prior to the filing date of this action, July 11, 2018:

- The Polizzis note that Torres has not worked for them since 2002, and that any of the alleged predicate acts occurred between sixteen and eighteen years ago.
- Agostino Vitale asserts that Torres worked in his restaurant from 2002 to 2009, so the statute of limitations has also passed.
- Finally, Salvatore Vitale and Belinda Pierson assert that any claims arising during Torres' first two stints in the Leonard, Michigan Vitale's are barred by the statute of limitations because Torres ceased working there in May of 2014 and did not begin again until March of 2017.

10

In response, Torres generally argues that there are questions of fact as to the time he discovered the injury, so the motion to dismiss on statute of limitations grounds is improper. He asserts that he was unaware of how overtime laws worked, and that when various Defendants allegedly told him that small businesses did not have to pay overtime, it prevented him from learning of the injury. Essentially, Plaintiff argues that although he was aware of the two time-card system and received pay stubs that did not list all of the hours that he had worked, it was reasonable to rely on the Defendants' alleged statement that Vitale's was a small business and was exempt from overtime pay, so he did not discover his alleged injuries.

As previously discussed, the statute of limitations begins when a party knows, or through reasonable diligence, should have discovered the injury caused by a RICO violation. *See Guy*, 711 F. App'x at 253. Put more colorfully, a plaintiff need only be aware of "storm warnings" but does not need to "hear[ ] thunder and see [ ] lightning." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 436 (6th Cir. 2005) (quoting *Isaak*, 169 F.3d at 399).

Based on the pleadings, Plaintiff's claims as to the Polizzis and Agostino Vitale are unquestionably barred by the statute of limitations. First, no reasonable person would accept the given explanation for Vitale's practices including under-reporting Torres' time, paying him in cash, and issuing W-2 statements that did not match with the wages he had actually earned. In other words, if Vitale's truly did not need to pay overtime wages, then why would it bother going through the concentrated effort to track overtime wages separately, pay them out in cash, and not disclose those wages to the government? Why would the company's

status as a small business mean that Torres was not required to pay income taxes on the wages he earned for hours in excess of forty?

Based on the facts alleged and taken as true, Torres did not just have "storm warnings," of the fraud; tornado sirens blared, softball-sized hail fell, and flash flooding raged before his eyes. *Sims*, 151 F. App'x at 436. Under such circumstances, the Court need not delay a ruling on the statute of limitations because reasonable minds could not disagree that Plaintiff knew or should have known of his injury more than sixteen years ago in the case of the Polizzis, at least nine years ago in the case of Agostino Vitale, and at least five years ago for Salvatore and Belinda (other than Torres' last stint of employment with the Leonard Vitale's).

Moreover, information regarding wage and hour law is publicly available and the Defendants "lacked the ability to fraudulently conceal it." *Cole v. Cox*, 41 F. App'x 826, 827 (6th Cir. 2002). Thus, even if the Defendants had asserted that they did not need to pay overtime premiums or report all of the hours Torres had worked, it could not constitute fraudulent concealment as a matter of law, because the Defendants placed Torres on immediate notice of his injuries: wage theft via non-payment of overtime and greater tax liability combined with reduced social security benefits because of the under-reporting of the hours he had worked. *See Guy*, 711 F. App'x at 253. Accordingly, the Court will not toll the statute of limitations.

Finally, the separate accrual rule Plaintiff argues that the Court should adopt will not save his claims against the Polizzis or Agostino Vitale. The rule permits recovery under RICO where "a separable, new predicate act within a 4-year limitations period permits a

plaintiff to recover for the additional damages caused by that act. But, as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.* 521 U.S. 179, 190 (1997).

In other words, without the separate accrual rule, once Plaintiff discovered or should have discovered his injury while working at Vitale's Ada, the statute of limitations began to run on *any* RICO claim arising out of the alleged scheme between the Defendants.

For example, look to *James v. McCoy*, where the plaintiff alleged racketeering activity between 1984 and 1990, but the claims were barred by the statute of limitations because the plaintiff became aware of the activity in May of 1990 and he did not file suit until after the four-year statute of limitations had run. 56 F. Supp. 2d 919, 934 (S.D. Ohio 1998), *aff'd* 181 F.3d 101 (6th Cir. May 11, 1999) (table op.) However, the *James* court applied the separate accrual rule (at least in practice, though it did not name it as such) and concluded that the plaintiff's claim raising separate racketeering activity within the four years prior to the filing of the complaint was not barred by the statute of limitations. *Id.*

Similarly, in *Trollinger v. Tyson Foods, Inc.*, the court applied the separate accrual rule to conclude that each time Tyson unlawfully hired an illegal immigrant, it constituted a new and separable injury, such that any predicate acts in the four years prior to filing suit remained actionable. 2006 WL 319022 (E.D. Tenn. Feb. 8, 2006) (Edgar, J.) In doing so, the *Trollinger* court rejected Tyson's position that its alleged hiring scheme constituted a single injury for which the statute of limitations had run. *Id.*

In sum, if the separate accrual act does not apply, and the Defendants are a part of a single enterprise that has continuously harmed Torres through the alleged predicate acts, then *all* of his claims are barred by the statute of limitations. However, Salvatore and Belinda have implicitly conceded the point by arguing only for partial dismissal via the statute of limitations, meaning that they believe the separate accrual rule does apply to save Plaintiff's claims arising out of his 2017-2018 employment at Vitale's Leonard.

What Plaintiff has really argued to be applied is the "last predicate act" recovery rule. (*See* PageID.332-33.) This theory would run the statute of limitations at the time of the last RICO predicate act and allow recovery for any injury resulting from the racketeering, even if it occurred many years prior. Accordingly, since Salvatore and Belinda allegedly committed mail fraud and wire fraud in 2017, all of Plaintiff's claims would be within the limitations period. However, the Supreme Court has expressly rejected the last predicate act rule. *See Klehr*, 521 U.S. at 186-190 (1997).

Accordingly, Torres' claims against Agostino Vitale and Angela and Giuseppe Polizzi are barred by the statute of limitations, so their motions will be granted. The Court further grants Salvatore and Belinda's motion to dismiss the claims against them that arose out of Torres' first two spans of employment, which ended in May of 2014. The separate accrual rule applies and allows for Plaintiff to pursue his claims arising out of his 2017-2018 employment at Vitale's Leonard.

Having concluded that the lion's share of Torres' claims are barred on statute of limitations grounds, the Court need not consider additional arguments raised by the Polizzis or Agostino Vitale. It will thus take up the remaining arguments presented by Belinda and Salvatore.

### B. Preemption

Belinda and Salvatore argue that Plaintiff's RICO claims are preempted by the Fair Labor Standards Act.

Courts have come to divergent conclusions on whether the FLSA preempts overtime and time-keeping claims brought under RICO. *Compare DeSilva v. North Shore-Long Island Jewish Health Sys. Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ("[T]he Court concludes that, to the extent plaintiffs' civil RICO claims have merely re-cast plaintiffs' FLSA claims for unpaid overtime wages under a different label, those RICO allegations are precluded by the exclusive remedial scheme set forth in the FLSA."), *and Gordon v. Kaleida Health*, 847 F. Supp. 3d 479, 489 (W.D.N.Y. 2012) (concluding that "allowing plaintiffs to recover under civil RICO for alleged substantive violations of the FLSA would thwart Congress's careful, comprehensive scheme to remedy wage and hour violations falling within the FLSA's scope"), *and Valverde v. Xclusive Staffing Inc.*, 2017 WL 1386351 (D. Colo. Feb. 23, 2017) (adopting logic of *DeSilva*) *report and recommendation adopted in relevant part*, 2017 WL 3866769 (Sept. 5, 3017), *with Kuznyetsov v. W. Penn. Allegheny Health Sys. Inc.*, No. Civ. A 09-379, 2009 WL 2175585 (W.D. Pa. July 20, 2009) (concluding that the FLSA did not preempt pleaded RICO claim because the general goals of the respective statutes varied).

The most extensive analysis of this issue comes from *DeSilva*, where the plaintiffs alleged that their employer devised a scheme to defraud them by mailing false or deceptive payroll checks. *DeSilva*, 770 F. Supp. 2d at 511. The court concluded that portions of the plaintiff's RICO claim were duplicative of the plaintiff's FLSA claims for unpaid overtime and therefore preempted. *Id.* The court recognized that because RICO is a federal and not a state cause of action, the label of conflict or obstacle preemption is inexact, but determined that the same principles apply. *Id.* at 518. Those principles demonstrate that permitting a plaintiff to pursue a RICO claim to remedy violations of a FLSA right would stand as an obstacle to the enforcement of the FLSA. *Id.* This is because the FLSA's "broad remedial statutory scheme is exclusive and can preclude parallel actions brought under federal and state law." *Id.* at 513. Ultimately, "the key question for the court to resolve [was] whether, and to what extent, plaintiff's civil RICO claims [were] duplicative of their FLSA claims." 770 F. Supp. 2d at 115. The court framed the question as whether, "[b]ut for the proscriptions of the FLSA,'" the defendant's conduct would constitute a fraudulent scheme. *Id.* at 516 (quotations omitted).

After a full review of the pertinent caselaw, and in the absence of any controlling precedent, the Court concludes that the FLSA preempts Plaintiff's claims for the reasons stated in *DeSilva, Gordon,* and *Valverde*. Schemes like the one pleaded by Plaintiff are unfortunately ubiquitous in certain industries, and Congress specifically intended to combat such practices by enacting the broad remedial scheme contained within the Fair Labor Standards Act.

Particularly, the FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). Required records include "[h]ours worked each workday and total hours worked each workweek," and total wages paid each pay period, including straight-time earnings and premium pay for overtime hours. 29 C.F.R. 516.2(a)(7)-(11). The FLSA's time-keeping procedures are necessary for the Department of Labor to enforce the other aspects of the Act, including an employer's obligation to pay overtime premiums.

Here, Defendants' alleged predicate acts are not independent of the Fair Labor Standards Act because all of the alleged predicate acts are violations of the FLSA itself. While the claims pleaded by Plaintiff are serious violations of employment law, they are far from uncommon. *See, e.g., Lyles v. Burt's Butcher Shoppe and Eatery, Inc.*, 2011 WL 4915484 (M.D. Ga. Oct. 17, 2011); *Mata v. Foodbridge LLC*, 2015 WL 3457293 (S.D.N.Y. June 1, 2015); *Perez v. Sophia's LLC of Kalamazoo*, No. 1:14-cv-772, 2015 WL 7272234 (W.D. Mich. Nov. 17, 2015). If all employees who receive cash payments for unreported work were allowed to proceed under RICO, it would result in complete frustration of the broad remedial scheme Congress envisioned when enacting the FLSA. *See DeSilva*, 770 F. Supp. 2d at 515 ("[P]laintiffs would not have any claim for mail fraud or interference with their rights if they did not have an independent right under the FLSA to compensation for all overtime hours worked."); *Valverde*, 2017 WL 1386351, at \*6 ("Plaintiffs cannot meaningfully separate the facts that form the basis of their RICO claim from those that support their FLSA claim.").

Under such circumstances, the Court will not allow a plaintiff to bypass a specific statutory cause of action designed to remedy the injury alleged, in pursuit of a general statutory cause of action that disregards the specific procedures Congress enacted for pursuit of a collective action under the FLSA and allows for treble damages. The Court will thus grant Salvatore and Belinda's motion to dismiss for failure to state a claim on preemption grounds.

## IV.     Conclusion

For the reasons just explained, the Court will grant the motions to dismiss. Plaintiff's claims shall be dismissed with prejudice, and judgment shall enter.

### ORDER

As explained in the accompanying opinion, the Defendants' motions to dismiss (ECF Nos. 17, 20, 21) are **GRANTED.** Plaintiff's First Amended Complaint is **DISMISSED WITH PREJUDICE.**

**JUDGMENT TO FOLLOW.**

Date:   April 19, 2019                                        /s/ Paul L. Maloney  
                                                             Paul L. Maloney  
                                                             United States District Judge