**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: March 31, 2020

Mr. Robert Anthony Alvarez
Mr. Agustin Henriquez Jr.
Avanti Law Group, 600 28th Street, S.W.
Wyoming, MI 49509

Ms. Catherine A. Brainerd
Mr. Ian Alexander Northon
Rhoades McKee, 55 Campau Avenue, N.W., Suite 300
Grand Rapids, MI 49503

Mr. Karl W. Butterer Jr.
Foster, Swift, Collins & Smith
1700 E. Beltline Avenue, N.E., Suite 200
Grand Rapids, MI 49525

Mr. Frederick Edward Mackraz
Orlebeke Mackraz
80 Ottawa Avenue, N.W., Suite 400
Grand Rapids, MI 49503

      Re:  Case No. 19-1515, *Emilio Torres v. Salvatore Vitale, et al*
           Originating Case No. : 1:18-cv-00766

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                      Yours very truly,

                      Deborah S. Hunt, Clerk

                                                Cathryn Lovely
                                                Deputy Clerk

cc:  Mr. Thomas Dorwin

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0099p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

EMILIO TORRES, an individual,

    *Plaintiff-Appellant*,

*v.*

SALVATORE VITALE, BELINDA PIERSON, AGOSTINO VITALE, ANGELA LOGIUDICE-POLIZZI, GIUSEPPE POLIZZI, individuals, jointly and severally,

    *Defendants-Appellees*.

No. 19-1515

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cv-00766—Paul Lewis Maloney, District Judge.

Argued: December 10, 2019

Decided and Filed: March 31, 2020

Before: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Robert Anthony Alvarez, AVANTI LAW GROUP, PLLC, Wyoming, Michigan, for Appellant. Ian A. Northon, RHOADES MCKEE PC, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Robert Anthony Alvarez, Agustin Henriquez, AVANTI LAW GROUP, PLLC, Wyoming, Michigan, for Appellant. Ian A. Northon, Catherine A. Brainerd, RHOADES MCKEE PC, Grand Rapids, Michigan, for Appellees.

## OPINION

JOHN K. BUSH, Circuit Judge. Emilio Torres was a long-time employee at several locations of Vitale's Italian Restaurant Inc. located throughout Western Michigan. Although Torres and other Vitale's employees often worked more than forty hours per week, they allege that they were not paid overtime rates for those hours. Instead, Vitale's required the workers to keep track of their time on two separate timecards, one reflecting the first forty hours of work, and the other, reflecting overtime hours. The employees were paid via check for the first card and via cash for the second. The pay was at a straight time rate on the second card, although it reflected hours worked in excess of forty hours in a week. Therefore, Torres alleges, employees were deprived of overtime pay, and Vitale's did not pay taxes on the cash payments.

Torres filed suit, seeking damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. The district court dismissed his complaint, holding that the remedial scheme of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, precluded the RICO claim. We agree with the district court that Torres cannot proceed on his claims based on lost wages from the alleged "wage theft scheme." In addition, Torres may not pursue damages from the alleged "insurance fraud scheme," given that harms from the latter scheme accrued to the insurance company and not Torres. However, because the FLSA does not preclude RICO claims when a defendant commits a RICO-predicate offense giving rise to damages distinct from the lost wages available under the FLSA, we **REVERSE** as to Torres's claim that Vitale's is liable under RICO for failure to withhold taxes, and we **REMAND** to determine if Torres adequately pleaded a RICO claim that resulted in damages other than lost wages.

## I.

We state the facts as they are alleged in and can be plausibly inferred from the complaint. Vitale's is a business entity owned by Salvatore Vitale and managed by Belinda Pierson. The company started as a single Italian restaurant in Grand Rapids, Michigan, and has since grown to five locations across Western Michigan. Emilio Torres has a long employment history at Vitale's,

working sporadically at three Vitale's locations over the past two decades. He worked at the Ada, Michigan, location from 2000 to 2002, at the Comstock Park location from 2002 to 2009, and at the Grand Rapids location from 2010 through 2014, and then again from 2017 through 2018.

### A.  Wage Practices of Vitale's

When Torres began working at the Grand Rapids location in 2010, Salvatore told him that he would be compensated at an hourly rate. However, because Vitale's was a small business, Salvatore explained, Torres would not be paid an overtime premium for hours he worked in excess of forty. Salvatore further explained that Vitale's was not required to withhold taxes for any wages earned for any hours worked in excess of forty hours per week. Therefore, Salvatore and Belinda instructed Torres—and all other employees—to keep two different timecards: one to track the first forty hours of the work week, and a second to track any hours worked in excess of forty.

This method of reporting hours came to a head in 2018 when a customer threatened that he would report Salvatore's failure to pay overtime to the IRS. After the confrontation, Belinda instructed all employees to take their second timecards home with them. She further instructed the employees to bring their second timecards to her home over the weekend, and that she would pay the employees in cash—still at a straight-time, rather than overtime rate—the following Monday. Torres claims that he only began to question Vitale's non-payment of overtime and timekeeping practices after this confrontation.

### B.  Torres's Lawsuits against Vitale's

Torres then instituted a barrage of lawsuits against Vitale's stemming from the underpayment of wages. This is the second of those lawsuits. The first was filed in May 2018 in the United States District Court for the Western District of Michigan against Vitale's, Salvatore Vitale, and Belinda Pierson alleging violations of the FLSA. That suit asks to certify a collective action to recover unpaid wages. *See Torres v. Vitale's Italian Rest., Inc.*, No. 1:18-cv-547 (W.D. Mich.) (the "FLSA lawsuit"). The complaint in the FLSA lawsuit seeks to employ the FLSA's opt-in collective action mechanism for all of Vitale's employees who were harmed by this scheme.

Although the present suit involves the same factual scenario as in the FLSA lawsuit, Torres now pursues damages and class certification under RICO.  In his complaint, Torres sets forth numerous theories under which he asserts a claim under the civil RICO statute, including:  (1) a tax evasion scheme through which Vitale's defrauded local, state, and federal authorities in order to avoid paying tax withholdings; (2) a wage-theft scheme in which the two-timecard system was used to intentionally defraud the employees of proper wages; and (3) a worker's-compensation-insurance scheme, through which Vitale's defrauded its insurance carriers by submitting fraudulent wage amounts to the carriers that were relied upon in calculating insurance premiums.  These schemes, Torres contends, amount to RICO violations through mail and wire fraud of the federal government, the state government, the city governments, the employees, and the insurance carriers.

Torres maintains that the conduct of Vitale's amounted to a common illegal enterprise, the purpose of which was to defraud tax authorities, employees, and insurance carriers in order to realize greater profits.  To further its fraudulent scheme, Vitale's allegedly committed mail fraud and wire fraud by sending fraudulent pay stubs, W-2 forms, paychecks, and other documents through the mail and the wires.  Finally, Torres contends that the mail fraud and wire fraud constituted a pattern of racketeering activity as required for a civil RICO claim.  He sought certification of a class of all current and former employees of the three Vitale's restaurants where he had worked who had been paid in cash.

As Torres sees it, Vitale's engaged in tax evasion by under-reporting the hours its employees worked and failing to pay the required withholdings to tax authorities on the cash payments made for hours recorded on the second timecard.  Similarly, Torres claims that Vitale's decreased the employees' taxable income by not properly reporting the cash payments to the tax authorities.  According to Torres, the effect of this underreporting was to expose him to tax liabilities and penalties and decrease his future social security benefits.

The same basic facts form the basis for Torres's claim that Vitale's engaged in a scheme of wage theft.  Salvatore and Belinda communicated fraudulent deposits that, because of the two-timecard system, did not accurately depict the employees' earnings. And every direct deposit, which did not accurately reflect his pay, is claimed to be an act of wire fraud.  Similarly, Vitale's

allegedly committed mail fraud when it mailed Torres his yearly W-2 tax form, which did not record his cash payments.

Finally, the same facts also give rise to Torres's theory that Vitale's engaged in a scheme to defraud its worker's compensation carriers by under-reporting hours. In other words, because Vitale's allegedly under-reported the wages paid to the employees, it received lower insurance premiums than it would have otherwise.

The district court dismissed all of Torres's claims relating to his employment prior to 2018 as barred by RICO's four-year statute of limitations, leaving only the conduct relating to his time at Vitale's Grand Rapids location from 2017 to 2018. The district court then dismissed those claims as precluded by the FLSA. Adopting the reasoning from a case out of the Eastern District of New York, the district court held that "Congress specifically intended to combat [the alleged] practices by enacting the broad remedial scheme contained within the Fair Labor Standards Act." R. 29 at PageID 577. The district court held that Torres could not maintain a RICO action against Vitale's under these facts because "all of the alleged predicate acts are violations of the FLSA itself." *Id*. at PageID 578. Torres filed a timely appeal, raising only one issue: Whether the district court erred in concluding that the FLSA precludes RICO suits when the underlying conduct also violates the FLSA.

## II.

We review a district court's dismissal for failure to state a claim de novo. *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016). Construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, this court must determine whether the complaint states a plausible claim for relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). In doing so, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should not grant a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

We must decide whether the FLSA provides the sole remedy for Torres's claims. The FLSA and RICO are distinct statutory schemes that, at least on their faces, regulate wholly

different types of conduct. Consequently, it is not immediately intuitive that the FLSA could preclude a private cause of action under RICO, a seemingly unrelated statute that was meant to regulate a broad range of conduct not limited to labor and employment. The FLSA regulates wages and working conditions, whereas RICO punishes certain conspiratorial patterns of criminal activity. Nevertheless, although the statutes may appear to be directed at unrelated conduct, "[i]n a variety of contexts the [Supreme] Court has held that a precisely drawn, detailed statute [precludes] more general remedies." *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976)). In *Hinck v. United States*, for example, the Court held that the section of the Internal Revenue Code that vested the Tax Court with jurisdiction over abatement actions was a "precisely drawn, detailed statute" that precluded adjudication of abatement actions in Article III courts. 550 U.S. 501, 507 (2007). Similarly, in *Block v. North Dakota ex rel. Board of University and School Lands*, the Court held that adverse claimants to real property of the United States may not rely on officers' suits or other general remedies because the Quiet Title Act of 1972 provided their exclusive recourse. 461 U.S. 273, 284–86 (1983). Accordingly, we must decide if the FLSA is such a "precisely drawn, detailed statute" that would preclude suits under more general remedial schemes.[1]

First, we look to see if the text of the FLSA clearly shows that it is the type of precisely-drawn detailed remedial statute that would preclude more general remedies. Second, we address whether, and to what extent, the FLSA precludes RICO claims when the underlying RICO-predicate offense also violates the FLSA.

A.

We start, as always, with the text. *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 405 (1979). "In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." *In re Application to Obtain Discovery for Use in Foreign*

---

[1]The district court here, as well as several other district courts to have addressed this issue, have used the term "preemption" in determining whether a litigant may bring a civil RICO suit when the underlying RICO-predicate offense was itself a violation of the FLSA. That language is imprecise. Preemption involves a conflict between state law and federal law, but this case features a conflict between two federal statutes. *See N.Y. Tel. Co. v. N.Y. Dep't of Labor*, 440 U.S. 519, 539 n.32 (1979). Therefore, the FLSA could not "preempt" a civil RICO claim, but it could preclude it.

No. 19-1515 *Torres v. Vitale, et al.* Page 7

*Proceedings*, 939 F.3d 710, 717 (6th Cir. 2019) (quoting *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018)).

The text of the FLSA provides employees with two substantive guarantees. First, it mandates that employees receive a minimum wage for the hours that they work. 29 U.S.C. § 206(a). Second, it limits the work week to forty hours and requires that workers receive overtime pay at a rate of one and one-half times the normal rate for all hours worked in excess thereof. *Id*. § 207(a)(1). To effectuate those guarantees, "the FLSA provides an 'unusually elaborate' enforcement scheme." *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999). This enforcement scheme provides for criminal penalties for willful violations of the statute, 29 U.S.C. § 216(a), and a detailed civil enforcement scheme that affords a private right of action for aggrieved employees, *id.* § 216(b).

The text of the FLSA tells us that it is the type of precisely drawn, detailed statute that precludes more general remedies. It provides substantive guarantees for employees in the form of a federal minimum wage and maximum-hour work week. 29 U.S.C. §§ 206, 207. To effectuate those guarantees, it provides for a civil cause of action, *id*. § 216(b), which is terminated if the Secretary of Labor files a complaint on the employee's behalf, *id*. § 216(c). It also provides its own unique procedural framework for collective actions brought by multiple employers. *Id*.

However, the FLSA's remedial scheme is precisely drawn and detailed only with regard to wage and hour protections. As previously noted, the text gives two substantive guarantees: a federal minimum wage and a maximum-hour work week. 29 U.S.C. §§ 206, 207. The statute provides for a civil cause of action to enforce these substantive guarantees. *Id*. § 216(b). ("Any employer who violates the provisions of sections 206 or 207 of this title shall be liable to the employee . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . ."). The FLSA empowers the Secretary of Labor to file a complaint on behalf of aggrieved employees to the extent that "recovery is sought of unpaid minimum wages or unpaid overtime compensation under sections 206 and 207." *Id*. § 216(c). An employee's private right of action to recover lost wages terminates when the Secretary files a complaint. *Id*.

The FLSA contains a savings clause that provides, in relevant part, that "[n]o provision of this chapter . . . shall excuse noncompliance with any Federal or State law . . . establishing a minimum wage higher than . . . or a maximum workweek lower than . . . [those] established under this chapter." *Id.* § 218(a). Therefore, by its own terms, the savings clause applies only for claims involving wage and hour claims above the minimums set by the FLSA. This text shows that the FLSA is meant to provide the exclusive remedy for federal minimum wage and overtime violations. The savings clause also shows that Congress knew how to exempt certain laws from the FLSA's reach and allow other laws to operate concurrently with the FLSA. It did so for more stringent state minimum wage and maximum hour laws and for other federal labor laws. But, the savings clause did not exempt more general remedial schemes like RICO from the FLSA's reach when those claims are based on violations of the federal minimum wage or maximum hours guarantees.

The FLSA's explicit prohibition on opt-out class actions for wage and hour disputes further supports that Congress intended that the FLSA be the sole vehicle through which to remedy its substantive guarantees. As we explained in the context of considering whether the FLSA precludes duplicative claims under 42 U.S.C. § 1983, "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy. . . ." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005)). This detailed remedial scheme for violations of the wage and hour guarantees demonstrates that the FLSA was intended to preclude other means of redress for those same substantive rights.

We thus find, based on its text, that the FLSA is the sole vehicle through which a plaintiff can remedy its own substantive guarantees. In that same vein, however, because the text instructs us that the FLSA is the sole remedy *only* for federal minimum wage and overtime violations, the FLSA does not preclude suits for other damages, even when the underlying conduct in those suits also violated the FLSA.

No. 19-1515                     *Torres v. Vitale, et al.*                     Page 9

B.

Having concluded that the FLSA is the type of "precisely drawn, detailed statute," *EC Term of Years Tr.*, 550 U.S. at 433, that can preclude more general remedies, we therefore must decide whether, and if so, to what extent, the FLSA precludes a RICO suit.

In contrast with the FLSA's "unusually elaborate enforcement scheme," *Kendall*, 174 F.3d at 443, to remedy a particular type of misconduct, RICO has a "virtually unlimited sweep," providing a remedy for the broad range of wrongdoing that fits within its scope. *See generally* Gerard E. Lynch, *RICO: The Crime of Being a Criminal, Parts I & II*, 87 Colum. L. Rev. 661, 662 (1987). RICO makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). And "[r]acketeering activity" is, to say the least, defined broadly. The RICO statute lists thirty-five predicate offenses, including mail fraud and wire fraud. *Id.* § 1961(1). The Supreme Court has reaffirmed RICO's breadth time and time again. *See, e.g.*, *Sedima S.R.P.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) ("[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (alteration in original) (quoting *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 747 F.2d 384, 398 (7th Cir. 1984)).

In addition to criminal punishment, RICO provides civil remedies for individuals who are injured as the result of a RICO violation. The statute states, in pertinent part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c). Plaintiffs may pursue RICO claims in an opt-out class action under Federal Rule of Civil Procedure 23, so long as they plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. Of W. Ga.*, 768 F. App'x 446, 453 (6th Cir. 2019) (quoting *Sedima*, 473 U.S. at 496).

Various courts have decided cases that are instructive on the question of whether the FLSA's remedial scheme precludes a civil RICO claim. As noted, several courts, including our

own, have held that the FLSA's remedial scheme precludes suits brought under more general statutory schemes. For example, in *Michigan Corrections,* we held that the FLSA's remedial scheme precluded suits for unpaid wages under § 1983. 774 F.3d at 899. In that case, a group of Michigan corrections officers sued the Michigan Department of Corrections and its Director for prospective injunctive relief under § 1983, claiming a right to receive overtime compensation. *Id.* Affirming the district court's dismissal, we explained that "[t]he provision of an express, private means of redress in the statute itself . . . is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 904 (quoting *Rancho Palos Verdes*, 544 U.S. at 121). There, because the FLSA did not permit private parties to seek injunctive relief— a remedy that is available under § 1983—the officers could not maintain a suit for violations of the FLSA under § 1983. *Id*. We further explained, "[t]he FLSA as noted not only contains its own remedial scheme but also precludes a remedy that § 1983 would permit . . . ." *Id*. And we noted that the Supreme Court in "*Rancho Palos Verdes* observed that in no case in which the Supreme Court permitted plaintiffs to use § 1983 to enforce statutory rights involved a statute with an express private remedy." *Id.* (citing *Rancho Palos Verdes*, 544 U.S. at 121).

Moreover, at least one other court of appeals has recognized that RICO remedies may, in some circumstances, be precluded by a particular remedial framework of another statute. In *Norman v. Niagara Mohawk Power Corp.*, the Second Circuit affirmed the dismissal of a RICO claim as precluded by the remedy provided by the Energy Reorganization Act. 873 F.2d 634, 636 (2d Cir. 1989). The plaintiffs, whistleblowers at a nuclear power plant, were harassed and retaliated against as a result of their attempts to bring various violations and defects to the attention of the plant's management. *Id.* at 636. The workers brought a civil RICO suit alleging that the employer was engaged in a racketeering scheme meant to defraud investors and workers. *Id*. The Second Circuit held that Section 210 of the Energy Reorganization Act, which provides a remedy and procedural framework for whistleblowers to vindicate their statutory rights, precludes a suit under RICO when "distilled to its essence," [the lawsuit] alleges no more than that [plaintiffs were attempting to vindicate the rights guaranteed in the statute which gives rise to the cause of action.] *Id*. at 637.

Finally, several district courts have analyzed FLSA-based RICO claims.  Some have, as the district court did here, dismissed them outright as precluded by the FLSA.  *See, e.g.*, *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2017 WL 3866769, at *4–5 (D. Colo. Sept. 5, 2017).  Others have dismissed duplicative FLSA-based RICO claims as precluded by the FLSA because the FLSA provides the exclusive remedy for wage and overtime disputes.  *See, e.g.*, *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011).  Others still have held that the FLSA's savings clause suggests that Congress did not intend for the FLSA to provide the exclusive remedy for the violations of its provisions and therefore does not preclude even duplicative claims.  *See Montize v. Pittman Props. Ltd. P'ship No. 1*, 719 F. Supp. 2d 1052 (W.D. Ark. 2010).

The weight of this persuasive authority leads us to conclude that through the FLSA's enforcement mechanism itself, Congress prescribed the exclusive vehicle through which plaintiffs may remedy its substantive guarantees.  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007); *Kendall*, 174 F.3d at 443; *see also Roman v. Maietta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998).  As discussed above, the text of the FLSA provides a remedial framework for employees to vindicate the rights provided by the statute.  The persuasive authority tells us two things.  First, the remedial scheme of the FLSA can preclude other general remedies.  Second, RICO claims can be precluded by detailed remedial schemes.  It follows, therefore, that the FLSA's detailed remedial scheme precludes certain claims brought under the RICO statute.

C.

We hold that the FLSA preclude RICO claims to the extent that the damages sought are for unpaid minimum or overtime wages.  However, when a RICO claim that is based on a dispute between an employer and an employee alleges damages that are distinct from unpaid wages, even if the RICO-predicate act arises from conduct that also violates the FLSA, then the RICO remedies do not fall within the ambit of the FLSA's remedial scheme and are therefore not precluded.

Courts have held that the FLSA  may not preclude more general remedies when the claims are not "directly covered by the FLSA."  *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000).  In *Williamson*, for example, a group of aggrieved employees brought suit

against their employer for fraudulently inducing them not to join a settlement for unpaid overtime wages.  *Id.*  The employees alleged that their employer told them that they would commit "career suicide" if they joined the lawsuit, and that the plant at which they worked would remain open for several more years.  *Id.*  The employees claimed that this amounted to "career fraud" because the employer knew that the plant would be shut down within the year.  *Id.*  On the issue of whether the FLSA precluded the employees' state-law fraud claims, the Ninth Circuit held that "[f]raud claims by employees do not conflict with the FLSA any more than claims for wrongful death, assault or murder.  Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA."  *Id.*

As previously discussed, the text of the FLSA provides a detailed remedial scheme for its own substantive guarantees of a federal minimum wage and maximum hour work week.  *See* Section II. A.*, supra.*  The FLSA's detailed remedial scheme relates *only* to those substantive guarantees.  *See id.; see also* 29 U.S. § 216(b).  Therefore, the FLSA precludes claims brought under RICO only to the extent they seek a remedy that is explicitly covered by the FLSA, that is, claims seeking damages for wage and hour violations.[2]

### III.

Having held that the FLSA precludes civil RICO suits only when the damages sought are for unpaid wages, we next turn to whether any of Torres's claims survive.  Although the district court dismissed Torres's suit in its entirety on the grounds of preclusion, we may affirm "on any grounds supported by the record even if different from the reasons of the district court."  *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007); *see Miller v. Kent Nutrition Grp., Inc.*, 783 F. App'x 604,

---

[2]At least one district court has reached this same conclusion.  In *DeSilva*, a group of nurses brought suit against their hospital employer, alleging that the hospital maintained illegal pay policies, including an automatic meal and break deduction policy which deducted half an hour of pay for lunch breaks even if the nurses had to work through lunch, an unpaid training policy, and an unpaid pre- and post-work schedule policy.  770 F. Supp. 2d at 505.  The nurses brought suit against the hospital under several common law causes of action, the FLSA, and RICO.  *Id.* at 503.  The court held that the FLSA precludes a RICO claim "to the extent that it is duplicative of the FLSA claims seeking unpaid overtime."  *Id.* at 512.  However, the court did not purport to hold that the FLSA is a wholesale bar on RICO claims that are based on employment disputes.  The court noted: "to the extent that plaintiffs are seeking unpaid wages for hours that were not overtime hours—in other words, wages that would not be covered by the requirements of the FLSA—the civil RICO claims . . . are not precluded."  *Id.*

No. 19-1515 *Torres v. Vitale, et al.* Page 13

606–07 (6th Cir. 2019).  Torres claims that he is entitled to damages under three distinct "schemes" perpetrated by Vitale's: wage theft; workers' compensation insurance theft;  and tax evasion.

First, Torres claims he is entitled to damages under RICO because Vitale's engaged in a wage-theft scheme in which the two-timecard system was used to intentionally defraud the employees of proper overtime wages. To the extent that Torres is claiming that the "wage theft scheme" deprived him of his time-and-a-half overtime bonus, the claim is precluded by the FLSA because it is seeking the exact same remedy that is provided by the FLSA.  Therefore, Torres's RICO claim as it relates to the underpayment of overtime wages was properly dismissed.

Second, Torres claims that he is entitled to damages because Vitale's engaged in a "worker's compensation insurance scheme" through which Vitale's benefitted by falsely reporting payroll to its insurance company, thus lowering its premiums.  RICO provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation" of the RICO statute. 18 U.S.C. § 1964(c).  Although Vitale's insurance company may have something to say about this scheme, Torres has not identified any way in which *he* was "injured in his business or property" by the alleged fraud performed on the insurance company.  Therefore, this claim was also properly dismissed.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004) (dismissing a RICO suit brought by a plaintiff who suffered "derivative or passed-on injuries");  *see also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 274 (1992) ("Allowing suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits.") (cleaned up)).

Finally, Torres claims that he is entitled to damages because of a tax-evasion scheme through which he and other similarly-situated Vitale's employees were deprived of the employer's half of social security payments, and were then subjected to tax liabilities.  Unlike the wage-theft scheme, which is precluded under the FLSA because it seeks recompense for unpaid overtime wages, and the insurance-theft scheme, which clearly did not harm Torres in his business or property so as to state a cognizable RICO claim, we cannot say whether the tax-evasion scheme is precluded under the FLSA.  Without the benefit of briefing or argument on this issue, we decline to decide in the first instance whether Torres has pleaded cognizable damages separate from lost

No. 19-1515 *Torres v. Vitale, et al.* Page 14

wages so as to state a viable RICO claim. The district court should address this issue on remand in proceedings consistent with this opinion.

## IV.

For the foregoing reasons, we **REVERSE** the district court's grant of Vitale's motion to dismiss and **REMAND** to determine if Torres has adequately pleaded a RICO claim with damages that are distinct from his wage and hour claims.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-1515

EMILIO TORRES, an individual,

    Plaintiff - Appellant,

  v.

SALVATORE VITALE, BELINDA PIERSON, AGOSTINO VITALE, ANGELA LOGIUDICE-POLIZZI, GIUSEPPE POLIZZI, individuals, jointly and severally,

    Defendants - Appellees.

**FILED**
Mar 31, 2020
DEBORAH S. HUNT, Clerk

Before: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal of the action is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk