UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILIO TORRES,

    Plaintiff,

v.

SALVATORE VITALE, et al.,

    Defendants.
_____/

Case No. 1:18-cv-766

Honorable Hala Y. Jarbou

## ORDER

This is an action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Plaintiff Emilio Torres is a former employee of several of Defendants' restaurants. He seeks damages related to the alleged underpayment of overtime wages by Defendants. The Court dismissed the case in April 2019, finding that Torres' claims related to his employment prior to 2018 were barred by RICO's four-year statute of limitations. (*See* 4/19/2019 Op., ECF No. 29.) The Court also found that the remaining claims were preempted by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

Torres appealed this Court's decision to the Court of Appeals. That court reversed the dismissal in part, summarizing the facts and the procedural history of the case as follows:

> Emilio Torres was a long-time employee at several locations of Vitale's Italian Restaurant Inc. located throughout Western Michigan. Although Torres and other Vitale's employees often worked more than forty hours per week, they allege that they were not paid overtime rates for those hours. Instead, Vitale's required the workers to keep track of their time on two separate timecards, one reflecting the first forty hours of work, and the other, reflecting overtime hours. The employees were paid via check for the first card and via cash for the second. The pay was at a straight time rate on the second card, although it reflected hours worked in excess of forty hours in a week. Therefore, Torres alleges, employees were deprived of overtime pay, and Vitale's did not pay taxes on the cash payments.

> Torres filed suit, seeking damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The district court dismissed his complaint, holding that the remedial scheme of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., precluded the RICO claim. We agree with the district court that Torres cannot proceed on his claims based on lost wages from the alleged "wage theft scheme." In addition, Torres may not pursue damages from the alleged "insurance fraud scheme," given that harms from the latter scheme accrued to the insurance company and not Torres. However, because the FLSA does not preclude RICO claims when a defendant commits a RICO-predicate offense giving rise to damages distinct from the lost wages available under the FLSA, we REVERSE as to Torres's claim that Vitale's is liable under RICO for failure to withhold taxes, and we REMAND to determine if Torres adequately pleaded a RICO claim that resulted in damages other than lost wages.

*Torres v. Vitale*, 954 F.3d 866, 868-69 (6th Cir. 2020).

To unpack that summary a bit, RICO permits a private cause of action for injuries stemming from a "pattern of racketeering activity" by an "enterprise." *See id.* at 873-74; 18 U.S.C. § 1964(c) (providing that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."). Torres rested his RICO claim on three theories of racketeering activity by Defendants: (1) a "wage theft scheme," in which Defendants used a "two-timecard system . . . to intentionally defraud the employees of proper overtime wages"; (2) a "worker's compensation insurance scheme," in which Defendants reported false payroll figures to its insurance company, thereby lowering its insurance premiums; and (3) a "tax-evasion scheme," whereby Defendants' employees "were deprived of the employer's half of social security payments, and were then subjected to tax liabilities" due to nonpayment of those taxes. *Id.* at 876-77.

The Court of Appeals approved dismissal of the RICO claim based on the wage theft scheme because that claim is precluded by the FLSA. As relief for that claim, Torres sought reimbursement of his time-and-a-half overtime bonus, which is "the exact same remedy that is provided by the FLSA." *Id.* at 876.

2

The Court of Appeals also approved dismissal of the RICO claim based on the insurance scheme because Torres failed to identify any way in which his business or property were harmed by the alleged fraud on the insurance company. *Id.*

However, the Court of Appeals did not approve the dismissal of the claim based on the tax evasion scheme because that court "[could not] say whether the tax-evasion scheme is precluded under the FLSA. Without the benefit of briefing or argument on this issue, [the court] decline[d] to decide in the first instance whether Torres has pleaded cognizable damages separate from lost wages so as to state a viable RICO claim." *Id.* at 877. It then remanded the matter to this Court to decide that issue.

Before the Court is Torres' motion for leave to file a second amended complaint (ECF No. 45), which brings the foregoing issue to the Court's attention. Torres asserts that his proposed amended complaint "removes all allegations and theories related to . . . claims that the Circuit Court ruled are inapplicable to this matter – namely those claims related to the Wage Theft Scheme and the Worker's Compensation [Insurance] Scheme." (Pl.'s Br. in Supp. of Mot. for Leave to Am. Compl., ECF No. 46, PageID.635.) He contends that the proposed amended complaint addresses the alleged harm stemming from the tax evasion scheme. (*Id.*, PageID.637.)

Defendants oppose the motion, arguing that the proposed amended complaint cannot survive a motion to dismiss. The Court agrees.

A court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." *Knight Capital Partners Corp. v. Henckel AG & Co.*, 930 F.3d 775, 786

(6th Cir. 2019).  In this case, amendment would be futile.  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

"To state a cause of action under RICO, a plaintiff must allege that the defendants have engaged in a 'pattern of racketeering activity' through the repeated commission of predicate acts." *Collier v. LoGiudice*, 818 F. App'x 506, 511 (6th Cir. 2020).  In addition, a plaintiff must allege that the predicate acts "were a proximate cause of the plaintiff's injuries."  *Id.*  "'[T]he central question' for purposes of proximate causation under RICO 'is whether the alleged violation led *directly* to the plaintiff's injuries.'"  *Id.* (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  "The concept is flexible but 'the causal link between the injury and the conduct may [ ] be too weak to constitute proximate cause [if] it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes.'"  *Id.* (quoting *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004)).

Torres asserts a claim that is almost identical to one at issue in *Collier*.  Like the plaintiff in that case, Torres contends that his former employer "only reported to tax authorities the compensation paid to employees for the first forty hours worked in a week and did not report the cash payments made to employees for hours worked in excess of forty hours."  *Id.* (*See* Proposed Am. Compl. ¶ 58.b., ECF No. 46-1 (alleging that Defendants "did not properly report[] the cash payments to tax authorities").)  And like the plaintiff in *Collier*, Torres contends that he was injured because Defendants "did not pay the required amount of withholdings to tax authorities, which [he] argues injured [him] by lowering [his] future social security benefits and exposing [him] to tax liabilities and penalties."  *Id.* (*See* Proposed Am. Compl. ¶¶ 60-61 (alleging that Torres was harmed because he "incurred penalties and interest due to the misreported income and

4

withholdings by" Defendants, and that "Defendants' nonpayment of withholdings . . . lessened Plaintiff['s] . . . future social security benefits.").)

The Court of Appeals rejected the plaintiff's claim in *Collier* because the defendants' conduct "did not lead *directly* to [the plaintiff's] injuries." *Id.* at 512. The conduct directly responsible for the plaintiff's harm was the plaintiff's "own failure to pay her taxes." *Id.* (alterations and quotation marks omitted). The same is true here.

Torres apparently contends that Defendants are liable because he relied upon the wage statement they gave him before he filed his taxes for the 2017 tax year (*see* Proposed Am. Compl. ¶ 31), but the Court of Appeals rejected a similar argument in *Collier*. "Although most employees inherently rely upon the figures reported on the W-2s as accurate," the plaintiff's complaint in *Collier* indicated that she knew that her wage statements were incorrect when she filed her taxes. *Collier*, 818 F. App'x at 512 & n.2. She "knew she received off-the-books cash payments for certain hours and knew that her pay statements and W-2 statements did not include these off-the-books cash payments and she chose not to pay taxes on them." *Id.* (footnote omitted).

Similarly, Torres' complaint indicates that he knew, or should have known, that his wage statements did not reflect his total compensation and that Defendants were not withholding taxes from his overtime hours. For instance, he alleges that Defendants told him that "they were not required to withhold any taxes for any wages earned for any hours worked in excess of forty hours per week." (Proposed Am. Compl. ¶ 70.) And sometime after March 28, 2018, they also told him that "they would . . . not be reporting the cash payments as income and that Plaintiff should not attempt to report the cash payments." (*Id.* ¶ 71.) Furthermore, Torres alleges that he tracked his hours on two separate timecards. (*Id.* ¶ 63.) Consequently, he knew how many hours he worked. He also knew his pay rate. (*See id.* ¶ 35 (detailing Torres' hourly wage).) He could have performed

a simple calculation to determine his annual compensation and to compare it to the amount on his W-2 statement. Therefore, Defendants' alleged failure to report Torres' full compensation in his wage statement or to pay taxes on that full amount did not lead directly to Torres' injuries. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204 (2d Cir. 2013) (rejecting RICO claim based on false or misleading paychecks because "the paychecks did not perpetuate a fraud; rather, they disclosed any alleged underpayment [for compensable overtime]"). The proximate cause of Torres' injuries is his own failure to pay his taxes when due. Therefore, the Court will deny leave to amend the complaint.

Finally, the Court notes that the RICO claim predicated on Defendants' alleged tax evasion appears to be Torres' only remaining claim in his complaint. And although Defendants have asked the Court to dismiss the action, they have done so only in response to Torres' motion for leave to amend the complaint. They have not brought a proper motion for dismissal.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to amend the complaint (ECF No. 45) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen days from the date of this order to **SHOW CAUSE** why this Court should not dismiss the action for failure to state a claim.

Dated:   December 18, 2020                              /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        UNITED STATES DISTRICT JUDGE